CHARLES W. BEELER *v.* CORNELIUS J. BEHAN,
CHIEF OF POLICE OF BALTIMORE
COUNTY ET. AL

[No. 1123, September Term, 1981.]

*Decided September 8, 1983.*

The cause was argued before GILBERT, C. J., and ▮MORTON and *MASON, JJ.

*Allen G. Windsor,* with whom was *David S. Harris* on the brief, for appellant.

*H. Edgar Lentz, Assistant County Solicitor for Baltimore County,* with whom was *Leonard S. Jacobson, County Solicitor for Baltimore County,* on the brief, for appellees.

MASON, J., delivered the opinion of the Court.

A disciplinary Hearing Board of the Baltimore County Police Department found Officer Charles W. Beeler guilty of violating the following rules and regulations of the Baltimore County Police Department:

"Rule 1 — Conduct

Any breach of the peace, neglect of duty, miscon-
duct or any conduct on the part of any members of

the Department, either within or without Baltimore County, which tends to undermine the good order, efficiency, or discipline of the Department, or which reflects discredit upon the Department or any member thereof, or which is prejudicial to the efficiency and discipline of the Department, even though these offenses may not be specifically enumerated or laid down, shall be considered conduct unbecoming a member of the Police Department of Baltimore County, and subject to disciplinary action by the Police Chief.

. . .

Section 11. No member of the Department shall publicly criticize or ridicule the official action of any member of the Department, public official or judge."

The Hearing Board recommended the following penalty:

(1) Loss of two (2) days leave;
(2) Work ten (10) hours of extra duty without pay;
(3) Retraining.

The Baltimore County Police Chief concurred in the findings and recommendations of the Board, and the Circuit Court for Baltimore County affirmed the decision of the Baltimore County Police Department. On appeal, appellant argues, in essence, that the rules and regulations for which he was found guilty of violating are unconstitutionally vague and over-broad, and that the rules, as applied to him, unconstitutionally restricted his First Amendment right of free speech.

The charges against Beeler stem from the following facts: At approximately 1 A.M. on 9 April 1978, the Baltimore County Police responded to a report of overcrowded conditions at Mimi Jr.'s, a local county nightclub. Upon their arrival, the police proceeded to close down the club. As the crowd was leaving the premises, Beeler, who was off duty, approached Sergeant Vernon Becker in a hostile and aggressive manner, and in a loud voice criticized the depart-

ment for harassing the owner of the club. According to Sergeant Becker, Beeler said, "I know that Mimi takes care of the Parkville Police and we should not hassle him." Beeler also stated, "I am going to ISD [the Internal Affairs Section which investigates police conduct] and complain about this harassment that your guys are putting on Mimi, there's no problem here, this is more of Lowe's [Lt. Lowe] bullshit, everytime he works this place gets hassled." Sergeant Webster testified that Beeler "advised me that the police should leave Mimi alone because he takes care of all of the Parkville Police. I asked him what he meant and he said, you know what I meant." In addition to the presence of other police officers, there were several citizens in the vicinity when Beeler made his remarks. Some of the officers were angered and embarrassed by Beeler's remarks.

One month later when Beeler was questioned by Officer Hamel of Internal Affairs about this incident, he presented no evidence to support his remarks that "Mimi takes care of the Parkville Police," and that Mimi's was singled out by the police for harassment, nor did he file a complaint with respect to this matter.

First, we will address Beeler's contention that the rules and regulations of the Baltimore County Police Department, as applied to him, impermissibly restricted his constitutional right of free speech. The seminal case protecting the First Amendment rights of public employees is *Pickering v. Board of Education,* 396 U.S. 563 (1968). In that case, the Supreme Court invalidated the dismissal of a public school teacher who had written a letter to a local newspaper criticizing the way the Board of Education and the superintendent had handled past proposals to raise new revenue and the manner in which funds were allocated between educational and athletic programs.

After recognizing that the State has an interest as an employer in regulating the speech of its employees, the Court observed: "The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the inter-

ests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Because of the numerous and varied fact situations in which public employees make critical statements of their employers, the Court did not attempt to lay down a standard against which all statements by public employees may be judged. Instead, it set forth some general guidelines for balancing the First Amendment rights of the teacher and the need for orderly school administration.

Some of the factors which the Court considered as affecting the balance are whether the statements were directed toward any person with whom the teacher would normally be in contact in the course of his daily work; whether the statements had an adverse effect on maintaining discipline by immediate superiors or harmony among co-workers; whether the teacher's employment relationship with the Board and superintendent is the kind of close working relationship for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning; whether the statements impeded the teacher's proper performance of his duties in the classroom or interfered with the regular operation of the schools generally, and whether the statements made were knowingly or recklessly false.

After weighing the relevant facts in favor of the teacher, the Supreme Court held "that, in a case such as this, absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." *Pickering v. Board of Education, supra,* at 574, 575.

Appellant relies on the case of *Brukiewa v. Police Commissioner,* 257 Md. 36 (1970), for support. In that case, Brukiewa, who was President of the Baltimore City Police Union, was suspended from the force for twelve months, for violating departmental regulations which were practically identical to the challenged regulations in the instant case. The basis for Brukiewa's discharge was his public criticism

of the police department in a TV interview where he said there were problems in the department's reporting and patrol procedure; that the department's morale has "hit its lowest ebb" and if the situation continues, "the bottom is going to fall out of the City."

Relying extensively on *Pickering, supra,* the court said:

"Nothing that Brukiewa said has been charged, shown or found to be false or even inaccurate, nor may it be presumed to be. His personal fitness to perform his daily police duties obviously was not impaired by what he said for the Commissioner kept him on his regular active duty. His statements were not directed towards a superior with whom he would come into daily or frequent contact. His statements were not charged, shown or found to have affected discipline or harmony or the general efficiency or effectiveness of the police department."

*Id.* at 218.

In reversing Brukiewa's suspension, the Court of Appeals said:

"Our holding in the case is no more than a determination that the State did not show that Brukiewa's statements hurt or imperiled the discipline or operation of the Police Department and therefore were within his right to make, under the First Amendment, and the decisions of the Supreme Court."

*Id.* at 221. *See also DiGrazia v. County Executive for Montgomery Co.,* 288 Md. 437 (1980).

We think the facts in this case are markedly different from those in Brukiewa. Beeler's statements were directed not only toward superior officers but to fellow officers as well. The statements had an adverse effect on the harmony and relationship between Beeler and his fellow officers. In fact, the Hearing Board found "his comments were disruptive, demeaning and injurious to the reputation and morale of

fellow members of the Baltimore County Police Department." This finding by the Board is entitled to considerable deference. Moreover, we query whether Beeler's unsubstantiated statements were knowingly and recklessly false, and thus outside the orbit of First Amendment protection. In any event, applying the *Pickering* balancing test to the facts in this case, we conclude that the department's legitimate interest in discipline, *esprit de corps,* and efficiency outweighs the interest of Beeler to speak out on the matters in question. Accordingly, we conclude that the department regulations, as applied in this case, did not restrict any constitutionally protected conduct or speech.

Beeler also challenges the regulations as being unconstitutional, vague, and overbroad. We disagree. The Supreme Court has considered and rejected the vagueness and overbreadth argument in cases involving: a statute which forbade federal employees from "tak[ing] an active part in political management or in political campaigns," *CSC v. Letter Carriers,* 413 U.S. 548 (1973); a statute which authorized the removal of a nonprobationary government employee "for such cause as will promote the efficiency of the service," *Arnett v. Kennedy,* 416 U.S. 134 (1974); a section of the Uniform Code of Military Justice (10 U.S.C.S. 933) which proscribed "conduct unbecoming an officer or gentleman," and a section (10 U.S.C.S. 934) which forbade "all disorders and neglects to the prejudice of good order and discipline in the armed forces," *Parker v. Levy,* 417 U.S. 733 (1974). *See also Kannisto v. City and County of San Francisco,* 541 F.2d 841 (9th Cir. 1976). In that case, a police lieutenant made disrespectful and disparaging remarks about a superior officer during morning inspection. The officer was suspended from duty pursuant to a departmental regulation practically identical to the challenged regulation.

> "Any breach of the peace, neglect or duty, misconduct or any conduct on the part of any member either within or without the State which tends to subvert the good order, efficiency or discipline of this Department or which reflects discredit upon

the Department or any member thereof, or that is prejudicial to the efficiency and discipline of the Department, though such offenses are not specifically defined or laid down in these Rules and Procedures shall be considered unofficerlike conduct triable and punishable by the Board."

In finding that the regulation was not unconstitutionally vague and overbroad, the Court of Appeals for the Ninth Circuit stated:

"In our view there could be no reasonable doubt on Kannisto's part that a disparaging attack on his superior officer, communicated to patrolmen in the regular course of duty, would tend to 'subvert the good order, efficiency or discipline of [the] Department.'"

*Id.* at 845.

The facts and regulation involved in Kannisto are analogous to the instant case. Here, Beeler, in a hostile and aggressive manner, publicly criticized fellow police officers in the performance of their official duties and charged them with harassing the owner of a business establishment which he alleged "takes care" of the police. Beeler could have scarcely doubted that his remarks reflected discredit upon the department and members thereof, and could be considered, under the regulation, conduct unbecoming a member of the police department. Of like import *see Magri v. Giarrusso,* 379 F.Supp. 353 (E.D. Louisiana 1974); *Aycock v. Police Committee, etc.,* 218 S.E.2d 456 (1975), and *Hall v. Mayor & Director of Public Safety,* 407 A.2d 317. *But see Gasparinetti v. Kerr,* 568 F.2d 311 (3rd Cir. 1977). There, the disputed regulation provided:

"Department members shall not publicly disparage or comment unfavorably or disrespectfully on the official action of a superior officer. . . ."

A divided court found the regulation overbroad because:

> "It is the regulation's prohibition against unfavorable comment which we find to be the most troublesome, as it appears to sweep within its ambit, speech which is clearly protected under the first amendment. *Id.* at 316.

The regulation we are concerned with provides:

> "No member of the Department shall publicly criticize or ridicule the official action of any member of the Department, public official or judge."

We think there is a difference between publicly criticizing or ridiculing the official action of a police officer and merely commenting unfavorably on the official action of that officer. Moreover, "even though the department might possibly apply the regulation to some conduct ultimately to be held protected, we cannot, with only [Beeler's] challenge as a predicate, invalidate the regulation for overbreadth." *Kannisto v. City and County of San Francisco, supra* at 844. Accordingly, we conclude that the challenged regulations are constitutionally sufficient to withstand charges of overbreadth and vagueness.

Finally, Beeler argues that inasmuch as his remarks were made while off duty, he may not be disciplined. We do not agree. The regulations make no distinction between off duty and on duty misconduct by a police officer. *See Matter of Schlear,* Pa. Cmwith., 427 A.2d 751 (1981), where the court held that off duty conduct clearly may be the basis of a charge of misconduct unbecoming an officer.

For the reasons herein stated, we affirm.

*Judgment affirmed; costs to be paid by appellant.*