POLICE COMMISSIONER OF BOSTON *vs.* CIVIL SERVICE
COMMISSION & another.[1]

Suffolk. January 23, 1986. — June 16, 1986.

Present: PERRETTA, CUTTER, & SMITH, JJ.

*Police,* Discharge. *Civil Service,* Termination of employment, Judicial re-
view, Police. *Practice, Civil,* Review respecting civil service.

On a police officer's appeal following his discharge by the police commis-
sioner of Boston on a complaint setting out two specifications, the first
stating that the officer, "while on duty and in uniform failed to properly
transport an intoxicated person according to state law, engaged in sexual
intercourse and drank alcoholic beverages," and the second alleging that
the officer, "while in uniform and on duty engaged in unlawful sexual
acts," the Civil Service Commission had no authority under G. L.
c. 31, § 43, to reduce the penalty to an eighteen-month suspension on
the ground that a grand jury had failed to indict the officer for the
"unlawful sexual acts" referred to in the second specification, where the
record at the proceedings before the Commission showed substantial
misconduct such as would warrant the officer's discharge under either
of the specifications set out in the complaint against him. [370-372]

CIVIL ACTION commenced in the Superior Court Department
on June 11, 1985.

Motions for summary judgment were heard by *James F.
McHugh,* J.

*Nicholas Foundas* (*Michael D. Powers* with him) for the
plaintiff.

*Leonard G. Learner,* Assistant Attorney General, for Civil
Service Commission.

*Frank J. McGee* for Robert M. Ford.

---

[1] The employee, Robert M. Ford, requested and was allowed to intervene
as a party defendant.

PERRETTA, J. On the night of January 19, 1984, Boston police officer Robert M. Ford, while on duty and in uniform, took a woman of "questionable" sobriety into his custody. Rather than follow the procedures set out in G. L. c. 111B, § 8 (the Alcoholism Treatment and Rehabilitation Law),[2] Ford engaged in egregious misconduct, described in the next part of this opinion. After an investigation, the police commissioner discharged Ford from the police force for his derelictions of duty. Ford appealed to the Civil Service Commission (commission) under G. L. c. 31, § 43. The commission modified the discharge to an eighteen-month suspension. On the police commissioner's complaint in the nature of certiorari under G. L. c. 249, § 4, a Superior Court judge concluded that the commission had acted within its authority in modifying the penalty. We reverse.

I. *The Misconduct.*

We recite the facts as found by the commission's hearing officer and adopted by the commission. See *Watertown* v. *Arria,* 16 Mass. App. Ct. 331, 334 (1983). On the night of January 19, 1984, Ford and his partner responded to a radio call for assistance at a hotel in Boston. A woman who had been drinking and using profane language was being held at the hotel by hotel security officers.

Upon their arrival at the hotel, Ford and his partner escorted the woman to their cruiser. As found by the commission's hearing officer, the woman's "sobriety" at that time "is unknown but was still then questionable."[3] When the woman refused

---

[2] That statute, as appearing in St. 1979, c. 597, § 1, reads, in pertinent part: "Any person who is incapacitated may be assisted by a police officer with or without his consent to his residence, to a facility or to a police station. To determine for purposes of this chapter only, whether or not such person is intoxicated, the police officer may request the person to submit to reasonable tests of coordination, coherency of speech, and breath."

[3] This finding may well be based on the fact that there is nothing in the record to show that either Ford or his partner, in taking the woman into protective custody, asked the woman to submit to any tests permitted by G. L. c. 111B, § 8. They were not required to do so. Although the degree of her intoxication may not have been known with technical certainty, we learn from the testimony of Ford's partner before the internal affairs division of the police department (given on January 26, 1984, and intro-

the police officer's offer to take her home, they drove around the Back Bay section of Boston for a short time and then took her to her place of employment, a restaurant. When the officers refused to go inside and have a drink with her, she would not get out of the cruiser.

Ford's partner next drove to the police station and went inside, leaving Ford and the woman in the car. When he returned to the cruiser, Ford told him that he was going to take a "Code-10," his evening meal break,[4] and take the woman to a private club for a drink. He asked his partner to drive them there.

Once inside the club, Ford and the woman consumed beer, he completely disrobed himself, she partially undressed, and they had sexual intercourse. Ford neither physically coerced nor threatened the woman to engage in sex. At the end of his evening break, Ford and the woman dressed and left the club. They met Ford's partner, who drove them to the woman's residence, where they left her.[5] She telephoned police headquarters and reported a "voluntary rape."

II. *Procedural History*.

a. *Administrative proceedings*. On April 18, 1984, the personnel administrator for the Boston police department filed a complaint against Ford with the police commissioner. That complaint set out two specifications. The first, specification I, recited that Ford "while on duty and in uniform failed to

---

duced in evidence before the commission) that in his view, the woman "was obviously . . . drunk or under the influence of something . . . she was obviously very drunk."

[4] There is no dispute that, as the commission's hearing officer found, Ford was "on duty" while on his meal break. Section 27 of rule No. 103 of the rules and regulations of the Boston police department provides that an officer "on duty will be permitted to suspend patrol for the purpose of eating but only for such period of time as is authorized and only when permission for the same has been received from the Operations Division. Officers on the night tours of duty who have been granted this permission are to remain on the air and available for response to any emergency call should the situation require."

[5] For his actions that evening, Ford's partner received one hundred and twenty hours of "punishment duty."

properly transport an intoxicated person according to state law, engaged in sexual intercourse and drank alcoholic beverages" in violation of sections 3, 4 and 13 of rule No. 102 of the rules and regulations of the Boston police department.[6] The allegation set out in specification II reads that Ford "while in uniform and on duty engaged in unlawful sexual acts" in violation of § 35 of the rule.[7] By letter of the same date (April 18), the police commissioner notified Ford that he was "contemplating disciplinary action against [him] including discharge or suspension" and that a hearing on the complaint had been scheduled, all in accordance with G. L. c. 31, § 41. The police commissioner designated a superintendent in the police force to serve as his designated hearing officer.

From that designated hearing officer's decision of April 26, 1984, we learn that a grand jury had returned a "no bill" on the question of Ford's sexual conduct. It is on that basis that

---

[6] The pertinent provisions of the cited rule provide:

"*Section 3 CONDUCT*: Employees shall conduct themselves at all time, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include that which tends to indicate that the employee is unable or unfit to continue as a member of the Department, or tends to impair the operation of the Department or its employees.

"*Section 4 NEGLECT OF DUTY*: This includes any conduct or omission which is not in accordance with established and ordinary duties or procedures as to such employees or which constitutes use of unreasonable judgment in the exercising of any discretion granted to an employee."

"*Section 13 USE OF ALCOHOL AND TOBACCO ON DUTY*: Employees shall not drink alcoholic beverages when on duty unless it is necessary to gain evidence and upon the order of a superior officer. Employees shall not appear for duty or be on duty while under the influence of alcoholic beverages to any degree whatever or have an odor of alcohol on their breath."

[7] "*Section 35 CONFORMANCE TO LAWS*: Employees shall obey all laws of the United States, of the Commonwealth of Massachusetts, all City of Boston ordinances and by-laws and any rule or regulation having the force of law of any board, officer, or commission having the power to make rules and regulations. An employee of the Department who commits any criminal act shall be subject to disciplinary action up to and including discharge from the Department. Each case shall be considered on its own merits, and the circumstances of each shall be fully reviewed before the final action is taken."

As rule No. 102 provides that it was "issued to establish guidelines," we do not view a violation of §§ 3, 4 and 13 as an automatic violation of § 35.

he found Ford "not guilty" as to specification II. As put by the designated hearing officer, "I would be remiss if I were to annul the finding of that body based upon the same evidence." However, as to specification I, he concluded that Ford was "Guilty as charged."

Those violations set out in specification I merited, in the designated hearing officer's view, an eighteen-month suspension followed by probation for a period to be determined by the police commissioner, as well as a warning to Ford that any subsequent violation of the Rules would "subject [him] to immediate dismissal." The penalty recommendation was "[b]ased upon the punitive action of this department over the past four years for like offenses, *with the exception of the violation of General Law 111B, Section 8,* and bearing in mind the harmful effect that these acts have had on the personnel of this department via the media" (emphasis supplied).

Rejecting the view taken by his designated hearing officer, the police commissioner advised Ford by letter, dated May 3, 1984, that at the hearing on the complaint, evidence had been presented showing that "while on duty, you failed to properly transport an intoxicated person in accordance with law, you drank alcoholic beverages and engaged in sexual intercourse. There was evidence presented that the person with whom you had sexual intercourse at that time did not consent to the sexual intercourse." The police commissioner concluded his letter to Ford by informing him that as of May 4, 1984, he was discharged from the Boston police department.

Ford then appealed to the commission pursuant to G. L. c. 31, § 43. The commission's hearing officer concluded that Ford had violated those rules recited in specification I. He noted that the police commissioner's letter of May 3 made "reference to evidence" that the woman with whom Ford had intercourse "did not consent," but on the evidence put before him Ford "should be exonerated" on specification II. The commission's hearing officer found that the woman's actions "in total amounted to consent" and "were hardly commendable." Although Ford had "used very poor judgment," the woman was not a "victim."

Because the commission's hearing officer "concur[red]" with the designated hearing officer, he recommended that Ford's discharge be reduced "to an eighteen month suspension from the time of the original imposition of discipline." By a three-to-one vote, the commission accepted and adopted the report of its hearing officer. Hence, Ford's discharge was modified to a suspension. This the commission did, apparently assuming that it had the power to do so under G. L. c. 31, § 43, as appearing in St. 1981, c. 767, § 20, which provides that the commission may "modify any penalty imposed by the appointing authority."

b. *Judicial review*. Because the police commissioner was not entitled to seek review under G. L. c. 31, § 44, he brought this action in the nature of certiorari pursuant to G. L. c. 249, § 4. See *Debnam* v. *Belmont,* 388 Mass. 632, 633-634 (1983). He agreed that there was substantial evidence to support the commission's findings of fact but, in reliance upon *Watertown* v. *Arria,* 16 Mass. App. Ct. at 334, argued that in modifying the penalty the commission had erroneously substituted its judgment for his.

The trial judge noted that in *Arria,* the issue was whether "just cause" under § 41 existed for the employee's discharge in the first instance, whereas in the present case the sole question presented is the scope of the commission's power to modify a penalty under § 43. Citing *Murray* v. *Second Dist. Court of E. Middlesex,* 389 Mass. 508, 511 (1983), and *Faria* v. *Third Bristol Div. of the Dist. Court Dept.,* 14 Mass. App. Ct. 985, 986-987 (1982), the trial judge concluded that no modification by the commission could stand unless the reason therefore was articulated, supported by the record, and free of errors of law apparent on the record and adversely affecting material rights.

The trial judge determined that the commission had acted within its discretion in reducing Ford's penalty, essentially for the following reason. The modification was based upon the reason that, in discharging Ford, the police commissioner had relied upon the fact that the woman had not consented to the intercourse, as seen from his letter of May 3 to Ford. Because it was ultimately determined that the woman had consented,

the "foundation for the [police] commissioner's penalty was in part missing."

In reaching this conclusion, the trial judge rejected the police commissioner's argument that a discharge was in order under *either* of the two specifications. The trial judge reasoned: "The Commission was not required to determine whether the [police] Commissioner would have been justified in discharging Officer Ford upon proof of Specification I alone nor was it bound to accept the [police] Commissioner's *post hoc* statements, made through counsel, that discharge was the penalty he would have imposed had he known that Officer Ford was guilty only of the charges that Specification [I] contained."[8]

III. *Discussion.*

We think it obvious that any power in the commission to modify penalties under § 43 cannot be used in a manner which frustrates the very purpose of civil service legislation. As emphasized in *Murray* v. *Second Dist. Court of E. Middlesex,* 389 Mass. at 514: " 'The purpose of civil service legislation was to protect efficient public employees from partisan political control,' *Debnam* v. *Belmont,* 388 Mass. 632, 635 (1983), and not 'to prevent the removal of those who have proved to be incompetent or unworthy to continue in the public service,' *Cullen* v. *Mayor of Newton,* 308 Mass. 578, 581 (1941). We agree that, in order to carry out the legislative purpose, the appropriate inquiry is whether the employee has been guilty of substantial misconduct which adversely affects the public interest by impairing the efficiency of the public service." In our view, the commission's decision cannot stand because it is based upon such a profound misunderstanding of the role of a police officer that it either rises to the level of a substantial

---

[8] We do not view the police commissioner's statements as post hoc. Both in a memorandum of law submitted to the commission's hearing officer and during closing argument before that hearing officer, the police commissioner, through counsel, made his position clear that discharge was warranted under either of the specifications set out in the complaint against Ford. Similar representations were made to us. In these circumstances, we perceive no occasion for directing in part IV of this opinion that the commission remand the case for further consideration by the police commissioner.

error of law or is capricious to such a degree that it must, in the public interest, be reversed.

Notwithstanding the fact that a grand jury was asked but refused to indict Ford (presumably under G. L. c. 265, § 22, the rape statute), it is clear that Ford violated the very essence of the trust reposed in him by reason of his employment. The nature of that trust has been defined by the decisional law of this Commonwealth. As but a sample, see *Mayor of Medford* v. *First Dist. Court of E. Middlesex,* 249 Mass. 465, 470 (1924); *Mayor of Newton* v. *Civil Serv. Commn.,* 333 Mass. 340, 343 (1955); *Huntoon* v. *Quincy,* 349 Mass. 9, 14 (1965); *Broderick* v. *Police Commr. of Boston,* 368 Mass. 33, 41-43 (1975), and cases therein cited. These cases teach a simple lesson. Police officers must comport themselves in accordance with the laws that they are sworn to enforce *and* behave in a manner that brings honor and respect for rather than public distrust of law enforcement personnel. They are required to do more than refrain from indictable conduct. Police officers are not drafted into public service; rather, they compete for their positions. In accepting employment by the public, they implicitly agree that they will not engage in conduct which calls into question their ability and fitness to perform their official responsibilities.

We turn to the evidence before the commission of Ford's conduct. Although it does not appear in the record that Ford testified before the commission, his testimony at a probable cause hearing was put in evidence. That testimony reveals that Ford knew of the alternative courses of action that he could take under G. L. c. 111B, § 8, in order to protect the woman he had taken into custody. Once Ford and the woman were inside the private club, he got them each a beer, and he sat down to watch a hockey game on television. The woman, whom he knew to have been drinking (which is why she was in his protective custody in the first instance), sat next to him, kissed him, rubbed his groin, and took off her dress. According to Ford, at that point he succumbed and completely disrobed.

By expending their efforts to show that the woman's actions could be viewed sufficient to protect Ford from criminal pro-

ceedings and by enmeshing themselves in the analytics of the question of the appropriate standard of review to be applied in an action in the nature of certiorari, Ford and the commission have missed the central point. Based upon the commission's own findings, Ford engaged in outrageous conduct inimical to the most fundamental obligations imposed by reason of his position as a police officer, a position of special public trust. Although the degree of the woman's state of inebriation is not clear from the record, the undisputed facts are that she had been drinking and as a result of that had been taken into protective custody.[9] Any on-duty police officer who consumes alcohol and engages in sexual intercourse with a person who has been placed in protective custody and then provided additional alcohol by the officer shows far more than poor judgment.

This officer's misconduct was substantial, and it adversely affected the public interest "by impairing the efficiency of the public service." *Murray* v. *Second Dist. Court of E. Middlesex,* 389 Mass. at 514. Compare *Dedham* v. *Civil Service Commn.,* 21 Mass. App. Ct. 904, 906-907 (1985). The commission's explanation of its modification of the discharge penalty fixed by the police commissioner (in the latter's discretion) does not justify that modification. In behalf of the police commissioner (see note 8, *supra*) it has been made clear the penalty he would impose for a violation of either specification. On this record it cannot be concluded that this officer is fit to return to duty and once again hold the trust of the public.

IV. *Conclusion.*

Because there is nothing in the accepted findings to justify the reduction of the penalty from discharge to suspension, the trial judge was in error in affirming the decision of the commission. Accordingly, we reverse the judgment of the Superior

---

[9] On the issue of "protective custody" under G. L. c. 111B, § 8, the commission's hearing officer made alternative conclusions based upon the uncertainty of the degree of the woman's inebriation: (1) inasmuch as the woman was not placed under arrest and because Ford's partner mentioned "protective custody" to her, "it can be concluded that she was a person subject" to that statute; or (2) even if she were not subject of that statute, Ford's "conduct was the equivalent of failure to transport an intoxicated person."

Court. That court is to set aside the decision of the commission and affirm the decision of the police commissioner in all respects.

*So ordered.*