Police Commissioner of Boston *v.* Civil Service Commission.

POLICE COMMISSIONER OF BOSTON *vs.* CIVIL SERVICE
COMMISSION & another.[1]

No. 94-P-593.

Suffolk. October 6, 1995. - January 16, 1996.

Present: PERRETTA, GILLERMAN, & LENK, JJ.

*Practice, Civil,* Relief in the nature of certiorari. *Civil Service,* Decision of
Civil Service Commission, Judicial review, Police, Termination of em-
ployment. *Police,* Discharge.

The Civil Service Commission abused its discretion by modifying the pen-
alty imposed on a police officer for just cause by the police commis-
sioner, where nothing in the record of the proceedings warranted the
modification and where the commission gave no explanation for its ac-
tion. [598-602]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 4, 1991.

The case was heard by *Charles F. Barrett, J.,* on motions
for summary judgment.

*Kevin S. McDermott,* Assistant Corporation Counsel, for
Police Commissioner of Boston.

*Peter Sacks,* Assistant Attorney General, for the Civil Ser-
vice Commission.

LENK, J. This case arises from events that took place more
than ten years ago. It concerns, more particularly, the Boston
police commissioner's decision to discharge Charles B. Clark,
a six-year member of the Boston police department. Clark
had been disciplined on four prior occasions within the year
preceding the events of February 21, 1985, which precipi-
tated his termination. The case concerns as well the decision
of the Civil Service Commission (the commission) to modify
substantially the level of discipline imposed by the police

---

[1] Charles B. Clark.

commissioner in favor of an eighteen-month suspension plus alcohol rehabilitation. At issue on appeal from a judgment entered in the Superior Court affirming the commission's disciplinary modification is whether the commission erred in doing so in the face of its finding that the police commissioner had proved just cause for disciplining Clark for conduct "which tended to discredit himself and his department, in violation of Rule 102, sections 3 and 14 of the Rules and Regulations of the Boston Police Department."

The pertinent facts as found by the commission's hearing officer and adopted by the commission are these. In the late evening of February 21, 1985, while he was off duty, Clark approached an on-duty Massachusetts Bay Transit Authority (MBTA) police officer stationed approximately forty yards from the Boston Police Area B substation. That evening, under circumstances he could not recall, Clark had lost his personal revolver and his eyeglasses and had sustained an abrasion to his forehead. He was also intoxicated. Clark told the MBTA police officer that he wanted to report the loss of his revolver. When the MBTA police officer replied that he should instead report the loss of his gun at the nearby police substation, Clark verbally abused the officer. Clark, thereafter, did go to that police substation with the intention of reporting himself to be the victim of an assault, and proceeded to call the officer in charge "a fucking asshole."

Later that evening, after Clark had been driven to the Boston Police Area B station, he behaved in an uncooperative manner with a Boston police lieutenant. Until directly ordered by the lieutenant to do so, Clark refused to make out a report concerning a citizen's complaint lodged against him that evening. While at the Area B station, Clark told several officers that he had been the victim of an assault. Clark mentioned, however, that he could not remember any events from about one-half hour after leaving a bar and driving his car with three passengers in it until the time he was in the Area B substation.

In roughly the one-year period preceding this incident, Clark had been disciplined four times. On January 17, 1984,

Clark had been suspended for thirty days for off-duty alcohol consumption that resulted in obnoxious and offensive conduct toward a fellow police officer.[2] On March 21, 1984, Clark was suspended for two days for leaving his assigned sector without authorization. Six months later, on September 12, 1984, he was suspended for three days as the result of conduct unbecoming a police officer. On December 17, 1984, Clark agreed to perform eight extra hours of duty in lieu of suspension due to tardiness. In April of 1980, about a year after first becoming a police officer, Clark had also been suspended for three days for tardiness.

In connection with the events of February 21, 1985, Clark was charged with multiple violations of Boston police department rules set forth in four "specifications."[3] The department conducted a hearing pursuant to G. L. c. 31, § 41, and, based on the findings of the department's hearing officer, the police commissioner found that just cause existed to support the allegations in three of the four specifications.[4] Because of Clark's "past disciplinary misconduct and due to the gravity of the offenses," the police commissioner discharged Clark on August 16, 1985.

Clark appealed to the commission pursuant to G. L. c. 31, § 43. After conducting an evidentiary hearing, the commission's hearing officer found that the police department had

---

[2]More specifically, Clark was found by a fellow police officer in a car with an unconscious woman. The officer had responded to a police radio call to the effect that a man with a gun was beating a woman. Clark refused to relinquish his partially spent gun until it was forcibly taken from him, and he acted belligerently and disrespectfully to the responding police officer.

[3]Specification I charged Clark with violation of the rules and regulations of the department alleging that on February 21, 1985, he drank alcohol to such an extent that it resulted in obnoxious or offensive behavior which tended to discredit himself and the department. Specification II alleged that he assaulted Linda Riley and Adele Bowie on February 21, 1985, with his hands and a firearm. Specification III alleged that on February 21, 1985, he assaulted and falsely accused a Mr. and Mrs. Haye of robbing him. Specification IV alleged that he was untruthful in a March 6, 1985, internal affairs interview relative to his conduct on February 21, 1985.

[4]Specifications I, III, and IV.

met its burden of proving just cause for disciplining Clark under only one of the three specifications charged.[5] The hearing officer recommended that the police commissioner's decision to discharge Clark be modified to a one-year suspension. The commission on November 6, 1985, adopted the hearing officer's findings but determined that the decision to discharge Clark should be modified to an eighteen-month suspension plus alcohol rehabilitation. The commission did so expressly because the police department had not proven two of the three specifications on which the police commissioner's decision to discharge Clark had been based as well as because of circumstances the commission found to be mitigating (i.e., Clark's belief that he was a crime victim, his lost glasses, and his head injury).

The police commissioner, in January of 1986, filed an action in the nature of certiorari in the Superior Court complaining of the commission's modification of the level of discipline. Four years later, a Superior Court judge ordered summary judgment for the police commissioner and remanded the matter to him for reconsideration of the level of discipline to be imposed on Clark in light of the commission's findings. The commission did not appeal from this judgment.

On remand, the police commissioner considered the facts as found by the commission as well as Clark's case file and history of prior discipline. The police commissioner observed that the February 21, 1985, misbehavior found by the commission included Clark's loss of his revolver, verbal abuse of fellow officers, and initial refusal to make a report. The police commissioner made reference to the January, 1984, thirty-day suspension, which had also resulted from off-duty conduct where Clark had been intoxicated and a gun was involved and he acted belligerently toward fellow officers. The police commissioner determined that the February 21, 1985, misconduct, egregious in itself, when coupled with the prior incidents, was "very serious and incompatible with public safety." In making the decision to discharge Clark, the

[5]Specification I.

police commissioner considered Clark's alcoholism to be a mitigating factor but one insufficient to lessen the discipline. He also considered Clark's past record, "the public interest, the efficiency of the Department and the potential liability of the City of Boston." He terminated Clark's employment on February 12, 1991.

Clark appealed to the commission, which, on May 7, 1991, conducted a further hearing, apparently nonevidentiary, at which time Clark was given permission to have letters of reference sent on his behalf to the commission after the hearing. Such letters were in fact sent, attesting to Clark's mended ways. Having satisfied itself that Clark was rehabilitated and had met the requirements of its prior November 13, 1985, order, the commission concluded on August 26, 1991, that Clark "should now be restored to his employment as a Police Officer." In its decision, the commission noted that, following the issuance of the commission's November 13, 1985, order, the Superior Court had remanded the matter of the appropriate level of discipline to the police commissioner (which the commission characterized as "puzzling"), who upon reconsideration concluded that termination of employment was the appropriate discipline. The commission was silent, however, as to any consideration or weight it may have given to the police commissioner's reconsidered disciplinary decision. The police commissioner thereafter filed an action in the nature of certiorari in the Superior Court. Finding no error of law, the judge affirmed the action of the commission, from which judgment the police commissioner now appeals.

The standard of review in an action in the nature of certiorari is "to correct substantial errors of law apparent on the record adversely affecting material rights." *Commissioners of Civil Serv.* v. *Municipal Ct. of Boston*, 369 Mass. 84, 90 (1975), quoting from *Sullivan* v. *Committee on Rules of the House of Representatives*, 331 Mass. 135, 139 (1954). The police commissioner contends that the commission, contrary to G. L. c. 31, § 43, improperly substituted its judgment for his in modifying the level of discipline. In pertinent part, § 43, as amended by St. 1981, c. 767, § 20, requires that

"[i]f the commission by a preponderance of the evidence determines that there was just cause for an action taken against [an employee] it shall affirm the action of the appointing authority." The statute, however, later adds that "[t]he commission may also modify any penalty imposed by the appointing authority."

There is no dispute concerning whether just cause to discipline Clark was proven. The commission plainly determined on November 6, 1985, that the police commissioner had just cause to discipline Clark regarding Specification I. "Just cause" means "substantial misconduct which adversely affects the public interest by impairing the efficiency of the public service." *Murray* v. *Second Dist. Ct. of E. Middlesex*, 389 Mass. 508, 514 (1983). Consistent with the first part of the statutory language quoted above, the commission affirmed the police commissioner's action in so doing, a determination that remains unchallenged. It is the commission's modification of the level of discipline pursuant to the statutory authority under which it "may also modify any penalty imposed by the [police commissioner]," and not the commission's determination of just cause, that gives rise to the controversy before us.

That the case was twice before the commission complicates matters. The commission first acted to modify the level of discipline on November 6, 1985, and, thereafter, the Superior Court judge gave the police commissioner the opportunity to exercise anew his judgment as to the discipline called for in light of the commission's findings. The commission retained its power to review and, if appropriate, to modify the police commissioner's 1991 reconsidered penalty decision. At this juncture, however, the commission's 1985 "modification" itself had no further force or effect given the Superior Court's 1990 entry of judgment for, and its remand to, the police commissioner. In its 1991 decision, the commission nevertheless acted as if its 1985 modification remained undisturbed and as if the Superior Court judgment and the police commissioner's reconsidered penalty decision were without consequence. It neither reviewed the police commissioner's

reconsidered penalty decision nor determined that it should modify that penalty; to the contrary, the commission simply ordered Clark reinstated because he had complied with the commission's initial 1985 decision. The commission in so doing seriously misapprehended its proper role and plainly abused its discretion.

We are mindful of the commission's power to modify penalties and the considerable discretion provided it under G. L. c. 31, § 43. That discretion is, however, "not without bounds," and the commission may not modify a penalty without providing a reasoned explanation for doing so. *Faria* v. *Third Bristol Div. of the Dist. Ct. Dept.*, 14 Mass. App. Ct. 985, 986 (1982). See *Cambridge* v. *Civil Serv. Commn.*, 23 Mass. App. Ct. 936 (1986). It is well to remember that the power to modify is at its core the authority to review and, when appropriate, to temper, balance, and amend. The power to modify penalties permits the furtherance of uniformity and the equitable treatment of similarly situated individuals. It must be used to further, and not to frustrate, the purpose of civil service legislation, i.e., "to protect efficient public employees from partisan political control." *Debnam* v. *Belmont*, 388 Mass. 632, 635 (1983). It is not to be used "to prevent the removal of those who have proved to be incompetent or unworthy to continue in the public service." *Cullen* v. *Mayor of Newton*, 308 Mass. 578, 581 (1941). See *Police Commr. of Boston* v. *Civil Serv. Commn.*, 22 Mass. App. Ct. 364, 370 (1986). The power accorded the commission to modify penalties must not be confused with the power to impose penalties ab initio, which is a power accorded the appointing authority, here the police commissioner.

In its 1985 modification of the discharge penalty, the commission stated, albeit in a cursory and unsatisfactory manner, two reasons for its action. In its attempted 1991 modification, however, the commission offered no explanation for its action other than that it found Clark rehabilitated and in compliance with its 1985 order. The commission gave no consideration to the police commissioner's February, 1991, reconsidered penalty decision, his stated reasons for this deci-

sion, or why the commission found inappropriate the penalty imposed.

In *Police Commr. of Boston* v. *Civil Serv. Commn.*, 22 Mass. App. Ct. at 371, we noted:

> "Police officers must comport themselves in accordance with the laws that they are sworn to enforce *and* behave in a manner that brings honor and respect for rather than public distrust of law enforcement personnel. They are required to do more than refrain from indictable conduct. Police officers are not drafted into public service; rather, they compete for their positions. In accepting employment by the public, they implicitly agree that they will not engage in conduct which calls into question their ability and fitness to perform their official responsibilities." (Emphasis in original.)

Clark was a police officer whether on or off duty, and, in determining the appropriate discipline to impose for Clark's misconduct, it was incumbent upon the police commissioner to take this special status into account.

The police commissioner considered the February 21, 1985, incident involving the abuse of alcohol in a public setting, the loss of his revolver under circumstances he could not recall, and the verbal abuse of other police officers. This incident called to mind the January, 1984, incident involving an off-duty, drunk, and belligerent Clark whose gun again played a role. The police commissioner's conclusion that Clark's conduct warranted discharge is not unreasonable on its face and was never in any way discussed or disputed by the commission. The commission never suggests that Clark's misconduct was other than substantial, nor is there any basis to believe that the discharge penalty unfairly singled out Clark for punishment more harsh or unusual than otherwise imposed in like circumstances. The commission offers no explanation whatever for its conclusion that the discharge

should be modified, other than its unsatisfactory reference to Clark's rehabilitation.[6]

The commission's failure to explain its modification of the discharge penalty in the face of long-standing precedent requiring it to do so is unacceptable. In *Faria* v. *Third Bristol Div. of the Dist. Ct. Dept.*, 14 Mass. App. Ct. at 987, we emphasized that the need for some explanation of the commission's decision to modify a penalty was particularly compelling when the employee who has engaged in serious misconduct is a police officer, vested with the public trust. There is nothing in the record before us that warrants the commission's 1991 modification of the penalty and, accordingly, it cannot stand. We, therefore, reverse the judgment of the Superior Court in affirming the commission's decision. The Superior Court is to set aside the decision of the commission and affirm the 1991 decision of the police commissioner in all respects.

*So ordered.*

---

[6]This determination was based on letters of reference received after the commission's hearing. It goes without saying that the letters were not before the police commissioner when he made his reconsidered penalty decision and that he was given no opportunity at the commission hearing to make inquiry of or cross-examine those who supported Clark's claim that he was in fact rehabilitated.