Garsh, J.
In these consolidated actions, the plaintiffs, Quarry Place, Inc. (“Quarry”) and Ernest and Frank Dupuis (collectively referred to as “Dupuis”), move, pursuant to Mass.R.Civ.P. 12(c) and G.L.c. 249, §4, for judgment on the pleadings. The plaintiffs contend that the decision of the defendant, Underground Storage Tank Petroleum Product Cleanup Fund Administrative Review Board (“Board”), denying their applications for reimbursement of certain environ *399 mental cleanup costs was erroneous as a matter of law. For the reasons set forth below, the plaintiffs’ motions for judgment on the pleadings are DENIED, and the defendant’s motions for judgment on the pleadings are ALLOWED.
FACTS
A. Quany
Quarry is the owner and operator of a retail gasoline station located at 338 Quarry Place, Fall River, Massachusetts. There is an underground storage tank (“UST”) system on the premises. On June 16, 1993, gasoline released from the UST and was reported to the Massachusetts Department of Environmental Protection (“DEP”). As a result of the release, Quarry alleges that it incurred approximately $ 11,000 in costs for assessment and remediation response actions between June 16, 1993 and August 31, 1993.
On January 19, 1995, Quarry filed an Application for a Certificate of Compliance (“COC”) with the State Fire Marshal, who issued the COC on March 13, 1995. On the same day, Quarry, an existing dispensing facility, filed an Application for Eligibility. A second Application for Eligibility was filed on June 30, 1995. On January 25, 1996, the Executive Director of the Board advised Quarry that “(s]ince we did not receive your application on or before January 31, 1995, your claim [for pre-regulation costs] has been deemed ineligible and therefore will not be submitted to the UST Board for consideration.” The letter also advised Quarry that it may not seek additional Board reconsideration of this decision.
B. Dupuis
Ernest and Frank Dupuis are former owners of Marvel Oil, a heating oil distributor business located at 10 Ingell Street in Taunton, Massachusetts. The site is a former dispensing facility. On February 12, 1992, a release of petroleum from a UST was discovered at the Marvel Oil Site and reported to the DEP. As a result of the petroleum release, Dupuis alleges that it incurred approximately $48,300.00 in costs for assessment and remediation response actions between June 1, 1991 and June 30, 1994.
On January 3, 1995, Dupuis filed an application for a COC with the State Fire Marshal which was returned because it was incomplete. On January 30, 1995, Dupuis filed a second application and, on February 14, 1995, the State Fire Marshal issued the COC. On March 13, 1995, Dupuis filed an Application for Eligibility with the Board. A second Application for Eligibility was filed on June 30, 1995. On March 6, 1996, the Executive Director of the Board notified Dupuis that they “are not eligible to receive reimbursement for pre-regulation date costs . . . The deadline to file an application for reimbursement for pre-regulation date costs was January 31, 1995; their application for reimbursement was not filed until June 30, 1995.”
DISCUSSION
A party aggrieved by an action of the Board may bring an action in the nature of certiorari pursuant to G.L.c. 249, §4. The standard of review in such an action is to correct substantial errors of law that are apparent on the record and that affect material rights. Police Commissioner of Boston v. Civil Service Comm’n, 39 Mass.App.Ct. 594, 598 (1996). An agency’s interpretation of its own regulations is accorded considerable deference, but a court nevertheless “will not hesitate to overrule agency interpretations when their interpretations are arbitrary, unreasonable, or inconsistent with the plain terms of the regulation itself.” Warcewicz v. Department of Environmental Protection, 410 Mass. 548, 550 (1991).
The Underground Storage Tank Petroleum Product Cleanup Fund was created in 1990 by the Legislature to expedite environmental cleanup by providing partial reimbursement to owners or operators of UST systems for costs incurred as a result of releases of petroleum from USTs. G.L.c. 21J, §4. The Legislature also created the Board to review, process, and act on claims for reimbursement. G.L.c. 21J, §8. Section 8 specifically authorizes the Board to adopt rules and regulations pertaining to administration and payment.
On July 1, 1994, the Board promulgated regulations which establish the procedures that must be followed in seeking reimbursement from the Fund. The regulations establish procedures for reimbursement of all claims arising after April 1, 1991, the effective date of the statute. A claimant must (1) obtain a COC from the State Fire Marshal demonstrating that the claimant was in full compliance with all applicable federal and state laws at the time of the release for which it seeks reimbursement; (2) file an Application for Eligibility with the Board; and (3) file an application for reimbursement. See 503 C.M.R. §2.09. The deadlines and procedures for filing pre-regulation claims — claims arising after April 1, 1991 but before July 1, 1994 — differ from claims arising subsequent to July 1, 1994, which are referred to as post-regulation claims. 503 C.M.R. §§2.16(1) and (2), 2.18(1)(a), 2.25(1)(a). BothQuariy and Dupuis seek reimbursement only for pre-regu-lation claims.
Quarry and Dupuis argue that their Applications for Eligibility were timely because, under 503 C.M.R. §2.16(1)(a), a person seeking reimbursement may file such an application “within six months of reporting a Release to DEP, within 12 months of closure, removal or abandonment of the UST System or within 12 months after July 1, 1994, whichever is later ...” The June 30, 1995 deadline in §2.16 (1)(a) does not, however, apply to Quarry or Dupuis.
*400 An earlier deadline is imposed for pre-regulation claims arising from dispensing facilities.[1] With respect to a claim from a former dispensing facility, such as Dupuis, the regulations provide as follows:
Any Claim arising from a Former Dispensing Facility shall be submitted to the Board on or before seven months after July 1, 1994 for costs, expenses or obligations for . . . Work performed after April 1, 1991 and before July 1, 1994 . . .
503 C.M.R. §2.25(1)(a). With respect to a claim from an existing Dispensing Facility, such as Quarry, the regulations provide as follows:
Any Claim arising from a Dispensing Facility other than a Dispensing Facility as to which 503 CMR 2.25 applies, for costs, expenses or obligations for . . . Work performed after April 1, 1991, and before July 1, 1994, shall be submitted to the Board on or before seven months after July 1, 1994.
503 C.M.R. §2.18(1)(a). Together, sections 2.25 and 2.18 set January 31, 1995 (seven months after July 1, 1994) as the submission deadline for claims for pre-regulation costs arising from a dispensing facility.
It is undisputed that Quariy filed its Application for Eligibility for pre-regulation costs no earlier than March 13, 1995. Quarry’s reliance on the June 30, 1995 deadline set forth in section 2.16 (1)(a) of the regulations is misplaced. Quariy missed the earlier deadline of January 31, 1995 in the applicable regulation governing pre-regulation claims for existing dispensing facilities, 503 C.M.R. §2.18(1)(a).[2] Accordingly, the Board properly refused to process Quariy’s application.
Similarly, it is undisputed that Dupuis filed its Application for Eligibility for pre-regulation costs no earlier than March 13, 1995, also mistakenly relying on the deadline set forth in section 2.16 of the regulations. Dupuis missed the earlier deadline of January 31, 1995 specifically set forth in the applicable regulation governing the claims procedure for pre-regulation claims involving former dispensing facilities, 503 C.M.R. §2.25(1)(a). The Board correctly refused to process Dupuis’ application.
The plaintiffs’ contention that section 2.16(1)(a) is applicable because that section exclusively controls the deadline for filing an Application for Eligibility, whereas sections 2.18 and 2.25 set forth the deadlines for filing “claims” is without merit[3] as is their further contention that they could not have filed a “claim” within the deadlines established in sections 2.18 or 2.25 because the regulations provide that “[n]o Claim shall be submitted to the Board unless and until the Board has made a favorable determination on the Application for Eligibility,” 503 C.M.R. §2.16(1)(e). In fact, Quarry and Dupuis were not precluded from timely filing their claims. Under section 2.16 (1)(c), in order to meet the deadlines set forth in sections 2.18 and 2.25, a claimant may file an Application for Eligibility and a Claim simultaneously.
An Application for Eligibility shall not be accompanied by Claims, receipted bills or other indicia of amount paid except if it is for a Claim for Response Actions performed... after April 1, 1991 and before July 1, 1994.
503 C.M.R. §2.16(1)(c) (emphasis added). See also 503 C.M.R. §216(2)(a). Further, had Quariy and Dupuis timely submitted their applications for a COC with the State Fire Marshal, the fact that the applications had not been acted upon by January 31, 1995 would not have precluded submission of a claim by the January 31, 1995 deadline. In the event that the State Fire Marshal has not approved an application for a COC within thirty days of receipt of all necessary information, a claimant is permitted to submit its application for a COC with proof showing that the time period has expired along with its Application for Eligibility and then supplement such application upon receipt of the COC. 503 C.M.R. §2.09(2)(d).
In sum, both Quarry and Dupuis failed to timely request reimbursement of their pre-regulation costs. No substantial errors are apparent on the record.
ORDER
For the foregoing reasons, it is hereby ORDERED that the motions of Quarry Place, Inc. and Ernest Dupuis and Frank Dupuis for judgment on the pleadings are DENIED and the defendant’s motions for judgment on the pleadings are ALLOWED.

 A “dispensing facility” is any facility at which underground storage tanks are used to store gasoline or other petroleum products and from which gasoline or other petroleum products are dispensed directly to a vehicle or boat as fuel. 503 C.M.R. §2.02. A “former dispensing facility” is a facility where a UST was operating on or after April 2, 1991 and at which the UST system was closed and not replaced prior to July 1, 1994. Id.

 503 C.M.R. §2.09(2)(a) alerts a claimant to the earlier deadline imposed for pre-regulation claims by stating, in connection with the deadline for filing an application for a COC with the State Fire Marshal “[NOTE: 503 C.M.R. §2.18 and 503 C.M.R. §2.25 may impose an earlier deadline].” Moreover, the Board’s newsletters and notices made it clear that pre-regulation claims were governed by a different deadline. The November 23, 1994 notice, for example, states that “[t]he deadline to submit applications eligibility for response action costs . . . during the period of 4/1/91 — 7/1/94 has been extended to 1/31/95.

 Plaintiffs fare no better with their argument that the staff of the Board was required to present their applications to the Board. Where, as here, the applications were patently late, nothing in the regulations or considerations of due process require the Executive Director to submit them to the Board. The plaintiffs also have no right to seek additional Board reconsideration.