NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-134

JEFFREY GODERE

vs.

CITY OF CHICOPEE & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On November 2, 2018, appellant Jeffrey Godere, then a

sergeant in the Chicopee police department, was terminated from

the department for untruthful conduct during an internal affairs

investigation.  He appealed his termination to the appellee

Civil Service Commission (commission), which is charged with

deciding whether there was just cause for a disciplinary action

taken against the employee.  Just cause is defined in this

context to mean "substantial misconduct which adversely affects

the public interest by impairing the efficiency of the public

service."  Doherty v. Civil Serv. Comm'n, 486 Mass. 487, 493

(2020), quoting Police Comm'r of Boston v. Civil Serv. Comm'n,

39 Mass. App. Ct. 594, 599 (1996).  The commission conducted an

evidentiary hearing and issued a written decision on February

_____

[1] Civil Service Commission.

13, 2020.  In that decision, the commission concluded that Godere's conduct "was a violation of the rules and regulations of the [Chicopee] Police Department regarding untruthfulness and constituted substantial misconduct which adversely affected the public interest."  It further concluded, however, that several factors in the case "warrant[ed] a modification of the penalty imposed."  Accordingly, the commission allowed Godere's appeal in part, vacated his termination, and demoted him from the rank of sergeant to the rank of police officer.  Godere sought judicial review in the Superior Court, under G. L. c. 30A, § 14, arguing that he should not have been punished at all for his untruthful conduct.[2]  A judge of the Superior Court affirmed the commission's decision, and this appeal followed.

Background.  The facts underlying this dispute are well known to all parties and will not be repeated here in detail.  We summarize the proceedings below and the relevant portions of the commission's findings of fact.  On August 26, 2011, Chicopee

_____

[2] The appellee city of Chicopee (city) argued before the Superior Court judge that the commission erred in modifying the penalty and that Godere's termination should be reinstated.  The city makes the same argument here.  Because the city failed to file a cross appeal, those arguments are waived.  See Saugus v. Refuse Energy Sys. Co., 388 Mass. 822, 831 (1983), quoting Boston Edison Co. v. Boston Redev. Auth., 374 Mass. 37, 43 n.5 (1977) ("Although a party may defend a judgment on any ground asserted in the trial court, failure to take a cross appeal precludes a party from obtaining a judgment more favorable to it than the judgment entered below").

officers, including Godere, responded to an apartment for a call of an unresponsive person. A female, determined to be deceased, apparently as a result of homicide, was discovered on the floor. Using their cell phones, two officers took a picture of the female and forwarded the photo to fellow police officers via individual text messages. At the police station, one of the officers who took the picture showed Godere the picture. Godere asked that the officer send him the photo, and after receiving the photo Godere forwarded the photo to another officer, denoted in the proceedings below, and to whom we will refer here, as Officer CL. CL showed the photo to multiple parents at a sporting event the next day. One month later, the Chicopee police department was made aware of the incident and approximately four months later commenced an internal investigation.

Four officers, including Godere, actively impeded the internal investigation by lying to the investigator. When asked about how he had received the photo of the female homicide victim, Godere responded that he "receive[s] different pictures, jokes and videos that people send me" and did "not recall who sent [him] the picture." When asked whether he had sent the photo of the female homicide victim to anyone else, Godere responded "[a]gain, I receive different pictures, jokes and videos on my phone. Some of those pictures, jokes and videos I

3

forward to others.  I do not recall if I sent this particular picture to anyone."  Both answers were untrue.  Godere was intentionally misleading the investigator because he was concerned about being a "rat."  Eventually, he told the investigator the truth.

At the conclusion of the internal investigation, three of the officers, including Godere, were charged with "incompetence" for "failing to conform to work standards established for the officers' position."  CL was given three tours of punishment duty; Godere and one other officer received a written warning.  Specifically, Godere was reprimanded for his improper use of a cell phone during an ongoing investigation.  None of the officers were charged with untruthfulness.

Though the police chief had refrained from disciplining any of the officers for untruthfulness, he did inform the district attorney of the incident.  The district attorney wrote to the police chief that "[s]uch lack of honesty is very troubling.  In future court proceedings, I will be ethically obligated, under mandatory discovery requirements, to produce this material when relevant to the question of these officers' credibility."  On January 10, 2013, the district attorney issued a "Brady" memorandum, derived from Brady v. Maryland, 373 U.S. 83 (1963), to all assistant district attorneys, indicating that when either Godere or CL was a potential witness in a case, the assistant

4

district attorney should determine whether disclosure of the officer's prior untruthfulness in the internal investigation would be relevant as exculpatory material.  Upon receiving the "Brady" letter, the chief of police discussed with the mayor the possibility of additional discipline for Godere and CL.  They decided against it.  For four years after the "Brady" letter was issued, no further administrative action related to the photo incident was taken against Godere or CL.  Godere was not even made aware of the letter.

In 2017, however, Chicopee had a new mayor and a new chief of police.  Both eventually learned of the existence of the "Brady" letter, and again the question of additional discipline arose.  This time, the question was answered in the affirmative.  The mayor issued Godere a notice of contemplated discipline, a discipline hearing was held, and Godere was ultimately terminated on November 2, 2018.  On review, as described at the outset, the commission modified Godere's penalty, ordering that Godere instead be demoted from sergeant to police officer.

Discussion.  We review the commission's decision to determine whether "the substantial rights of any party may have been prejudiced [because the commission decision] is based on an error of law, unsupported by substantial evidence, or otherwise not in accordance with the law."  Spencer v. Civil Serv. Comm'n, 479 Mass. 210, 215 (2018) (quotation and citation omitted).

5

Godere argues that the commission erred in upholding the decision to discipline him.  He argues that the determination not to discipline him for untruthfulness reached at the end of the initial internal investigation cannot be revisited years later by a subsequent administration.  He argues that it is contrary to the purpose of the civil service system to allow the election of a new mayor or the appointment of a new police chief to result in the reversal of prior decisions not to discipline a permanent, tenured civil service employee based upon the same information that was available to their predecessors.

Of course, "'[t]he fundamental purpose of the civil service system is to guard against political considerations, favoritism, and bias in governmental hiring and promotion.'  Massachusetts Ass'n of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 259 (2001).  It also is designed to 'protect efficient public employees' from partisanship and arbitrary punishment.  Murray v. Second Dist. Court of E. Middlesex, 389 Mass. 508, 514 (1983), quoting Debnam v. Belmont, 388 Mass. 632, 635 (1983).  See Dedham v. Labor Relations Comm'n, 365 Mass. 392, 396-397 (1974)."  Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 123 (2014).  But Godere points to no statute, regulation, or decision that disempowers a newly elected or appointed official from re-examining a decision of their predecessor not to discipline a civil service employee even though they act

otherwise lawfully.  Nor does Godere point to any statute of limitations or other source of law under which discipline for his untruthfulness came too late.

He argues next that the commission's decision violates principles of "industrial double jeopardy," see Zayas v. Bacardi Corp., 524 F.3d 65, 68 (1st Cir. 2008), because the city penalized him "twice for the same infraction."  Id. at 69.  But, assuming what we need not decide, that industrial double jeopardy principles apply, Godere's invocation of them is inapposite.  He was reprimanded in 2012 for his improper "use of a cell phone during an ongoing investigation."  But he was terminated in 2018 because he was found to have been untruthful and to have "impeded th[e] investigation" into his improper use of the cell phone.  These thus are not two punishments for the "same infraction" or, as he also puts it, quoting Heier v. North Dakota Dep't of Corrections & Rehabilitation, 820 N.W.2d 394, 399 (N.D. 2012), "one instance of misconduct."

Finally, he argues that he has been treated differently than two other officers, who were found to have been similarly untruthful in the internal affairs investigation but have since been promoted.  Godere raised his concerns about unequal treatment with the commission, which relied upon them in modifying the penalty.  Although we express no opinion on the propriety of those modifications, see note 2, supra, we have

7

observed that the commission's "power to modify penalties permits the furtherance of uniformity and the equitable treatment of similarly situated individuals.  It must be used to further, and not to frustrate, the purpose of civil service legislation, i.e., 'to protect efficient public employees from partisan political control.' Debnam[,] 388 Mass. [at 635].  It is not to be used 'to prevent the removal of those who have proved to be incompetent or unworthy to continue in the public service.' Cullen v. Mayor of Newton, 308 Mass. 578, 581 (1941)." Police Comm'r of Boston v. Civil Serv. Comm'n, 39 Mass. App. Ct. 594, 600 (1995).  By contrast, Godere points to no case law, and we know of none, that holds that the department's failure, even wrongful failure, to discipline officers who committed similar improper acts grants an officer immunity from a commission determination that there was just cause for disciplinary action against him.

As the commission decision was supported by substantial evidence, and Godere has shown neither legal error nor that the decision was not in accordance with law, the judgment of the

Superior Court affirming the decision of the commission will be affirmed.

Judgment affirmed.

By the Court (Meade, Rubin & Blake, JJ.[3]),

*Joseph F. Stanton*

Clerk

Entered:  August 9, 2023.

---

[3] The panelists are listed in order of seniority.