TOWN OF WATERTOWN vs. RICHARD ARRIA & another.[1]

Middlesex. May 13, 1983. — July 5, 1983.

Present: KASS, CUTTER, & SMITH, JJ.

*Police*, Discharge. *Civil Service*, Termination of employment.

On a police officer's appeal to the Civil Service Commission following his discharge by a town because of his record of drug and alcohol dependence, emotional problems and excessive use of sick leave, the Commission erred as matter of law in concluding, on the basis of psychiatric testimony as to the officer's present and predicted medical condition, that the town was unjustified in discharging him. [334-336]

CIVIL ACTION commenced in the Superior Court Department on June 12, 1981.

The case was heard by *Alberti*, J., on motions for summary judgment.

*Leonard E. Pass* for Richard Arria.

*Gary S. Brackett* for the plaintiff.

*Francis X. Bellotti*, Attorney General, *& Thomas A. Barnico*, Assistant Attorney General, for Civil Service Commission, submitted a brief.

CUTTER, J. Richard Arria was appointed a police officer in Watertown (the town) in 1970. He experienced as a police officer various difficult incidents. In 1975, he "began having trouble coping with his job . . . [and] sleeping." He "became nervous and upset, and deteriorated physically and emotionally." His family physician prescribed thirty quaaludes a month and valium. For quaaludes he "developed a tolerance" and "often relied on alcohol to help him sleep." On Christmas Day, 1978, while making an arrest, he was kicked in the back and neck and suffered injury for which demerol was prescribed. In May,

---

[1] Civil Service Commission.

1979, a board certified psychiatrist "treated him for severe agitated depression, phobias, nightmares, [and] dizziness." He prescribed "therapeutic, non-addictive drugs," removed him from valium, quaaludes, and demerol, and advised discontinuance of the use of alcohol.

In November, 1979, Arria applied for accidental disability retirement (G. L. c. 32, § 7, as amended through St. 1978, c. 487, § 6) claiming among other ailments, "[d]epressive neurosis, dorsal and cervical neck syndrome with somatic disfunction," and "[l]umbo-sacral and sacroiliac somatic d[i]sfunction," which (with other symptoms) he alleged to have been related to "various incidents from 1975 through 1979." A medical board, noting that Arria was disabled, "did not find . . . that his disability was permanent or that it was causally related to his employment." In January, 1980, after accidental disability retirement was denied, he began to improve and to reduce the medication and by May, 1980, he "was totally off drugs and alcohol" and, in the opinion of two psychiatrists, who had previously found him disabled, was able to return to full duty as a police officer.

From 1973 to 1978, Arria had *averaged* 12.6 sick days in excess of the fifteen days allotted each year. He, however, had not been subjected to any police department disciplinary proceedings. The Watertown selectmen, after hearing, discharged Arria on October 20, 1980. The reasons stated in the town's notice to Arria of his discharge were: "1. . . . admitted dependence on alcohol and drugs over a period of more than five years . . . . 2. . . . admitted inability to cope with the stresses and strains of . . . [the] job as a [p]olice [p]atrolman over the last five years . . . . 3. . . . poor attendance and abuse of sick leave during [the] entire period as a [p]atrolman . . . . 4. . . . [his] record of psychiatric problems . . . determined by a medical panel to be unrelated to . . . employment as a . . . [p]atrolman." Arria appealed to the Civil Service Commission. See G. L. c. 31, § 43, inserted by St. 1978, c. 393, § 11.

The facts stated in the first two paragraphs of this opinion are those found by the commission's hearing officer. He also found that as of February 27, 1981, Arria was "not dependent on drugs or alcohol" and could "perform all the duties of a police officer." On the basis of his findings, he concluded "that it would be inappropriate to discharge . . . [Arria] for a condition that is no longer present." The hearing officer added that, although Arria "took . . . sick days in excess of those allotted, it was when he was not rested or when he was nervous and unable to perform his job adequately, and hence was not an abuse of sick leave. As these problems are no longer present, in all likelihood, . . . [Arria's] sick leave in the future should be substantially reduced." His final conclusion was that the town "did not have just cause to discharge" Arria, and recommended that Arria be reinstated "without loss of compensation or other rights." On March 5, 1981, the commission adopted the hearing officer's findings of fact and reversed the appointing authority's action "because . . . [Arria] was not dependent on drugs at the time of the discharge" and "there was not any abuse of sick leave."

The town on June 5, 1981, commenced in the Superior Court this action in the nature of certiorari to review the commission's decision. See G. L. c. 249, § 4, as appearing in St. 1973, c. 1114, § 289; *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston,* 369 Mass. 84, 90 (1975). See also G. L. c. 31, §§ 41 to 44, as appearing in St. 1978, c. 393, § 11; *School Committee of Salem* v. *Civil Serv. Commn.,* 348 Mass. 696, 698-699 (1965), and cases cited. Randall & Franklin, Municipal Law § 358 (1982). A Superior Court judge heard the case on essentially the record now before us (including the proceedings of, and the evidence before, the commission). On cross motions for summary judgment, he reversed the decision of the commission and ordered that the action of the selectmen be affirmed. From the judgment entered in accordance with the judge's order Arria appeals.

At the time of the decision of the commission on March 5, 1981, the applicable statute governing its action was G. L. c. 31, § 43, inserted by St. 1978, c. 393, § 11 (see now St. 1981, c. 767, § 20, approved with an emergency preamble, on January 4, 1982). The second paragraph of § 43, as here applicable, then read, "The commission shall affirm the action of the appointing authority *if it finds that such action was justified.* Otherwise it shall reverse such action and the person concerned shall be returned to his position without loss of compensation or other rights. The commission may also modify any penalty imposed by the appointing authority" (emphasis supplied). The emphasized language has strong tendency to indicate that the question before the commission was not whether it would have acted as the appointing authority had acted, but whether, on the facts found by the commission, there was reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision. See *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston,* 359 Mass. 211, 213-217 (1971); *Commissioner of Rev.* v. *Lawrence,* 379 Mass. 205, 208-212 (1979); *Murray* v. *Second Dist. Court of E. Middlesex,* 389 Mass. 508, 513 (1983). See also *Sullivan* v. *Municipal Court of the Roxbury Dist.,* 322 Mass. 566, 572-573 (1948); *Cambridge Housing Authy.* v. *Civil Serv. Commn.,* 7 Mass. App. Ct. 586, 587-589 (1979); *Morse* v. *Selectmen of Ashland,* 7 Mass. App. Ct. 739 (1979); *Faria* v. *Third Bristol Div. of the Dist. Court Dept.,* 14 Mass. App. Ct. 985, 986 (1982). The *Lawrence* case, 379 Mass. at 208, and the *Murray* case, at 511, make clear that in an "action in the nature of certiorari . . . under G. L. c. 249, § 4," a court will correct only "substantial errors of law apparent on the record adversely affecting material rights."

We must accept the findings of the commission's hearing officer as adopted by the commission, if supported by substantial evidence. The question before us is whether those findings show on their face that the commission committed

error of law in deciding that the appointing authority was not justified in discharging Arria.[2]  In other words, we are called on to decide whether Arria's past very serious problems (as found by the commission) cause the decision to amount to error of law.

The commission's findings that Arria "was not dependent on drugs at the time of the discharge" are warranted by the psychiatric testimony in the record.  The commission also could reasonably find on the record that Arria's excessive use of sick leave, presumably resulting in loss of pay at least for days of excessive absences, was only (or principally) on days when he was (by lack of sleep and other consequences of his addiction) in fact unfit to act as an officer.  There was testimony of a psychiatrist that Arria's "condition had improved to such a degree" that he "could return to work, carry a gun, and perform all the duties of a policeman."  Other psychiatrists testified to the same effect.  There was, however, no express finding by the hearing officer that Arria would no longer have "problems coping with his job" beyond the general conclusion that "he . . . [could] perform all the duties of a police officer."  Arria commendably by the date of the commission's decision (February 27, 1981) had abandoned his past addictions and conduct.  Nevertheless, the findings about Arria's former conduct, his past drug dependency and use of alcohol, and his excessive past use of sick leave, show that the appointing authority had substantial and very practical reasons for discharging him.  On the commission's findings and those of its hearing officer, there was ample reason for the town to fear a recurrence of Arria's serious troubles.  There was basis in his past conduct for recognizing the grave risk that he would not be in the future a suitable officer.  We conclude that the commission's

---

[2] On the commission's own findings as to Arria's former drug use and excessive use of alcohol within five years and two years, respectively, of his discharge, he could have been rejected as an applicant for original appointment under the standards set out in Personnel Memorandum No. 80-4, Aug. 15, 1980, of the Division of Personnel Administration, incorporating by reference § XIV of the standards for public service appointments.

decision on its face revealed error of law in failing to recognize that Arria's past conduct justified the appointing authority's action, despite the psychiatric testimony that, at the time of the hearing, Arria was cured. The decision improperly forced the town to assume an unreasonable risk.

*Judgment affirmed.*