TOWN OF DEDHAM *vs.* CIVIL SERVICE COMMISSION & another.[1] October 7, 1985. *Civil Service,* Decision of Civil Service Commission, Findings by commission, Judicial review, Termination of employment.

In this action in the nature of certiorari (G.L c. 249, § 4), the town sought a review of the Civil Action Commission (the commission). That

---

[1] An employee of the town of Dedham.

decision (after a rehearing mentioned below) modified action of the town in discharging the employee. The following summary of the employee's employment by, and relations with, the town is based on the findings of the commission's hearing officer, who dealt with the employee's appeal to the commission, and on an affidavit of the employee's attorney.

The employee in 1971 had been hired as a laborer in the cemetery division of the town's department of public works. His duties involved "heavy physical activities such as shoveling . . . and carrying caskets." He performed this work acceptably and has not be subjected to discipline because of the quality of his work. He is unable to read, however, and suffers from psychiatric problems, mental retardation, and physical ailments and has received hospitalization for these matters. He has a history of violent outbursts and of difficulty in coping with various problems.

In May, 1972, the employee was suspended for five days for fighting. In June, 1972, he was suspended for one year because convicted of a crime. In October, 1977, he was suspended for two days for insubordination and oral abuse directed toward his supervisor. Over the years of his employment he had been warned on various occasions about his failure to report proposed absences from work and noncompliance with the department's sick leave policy. On several occasions, when the employee had been penalized for failure to report proposed absences, the penalties had been removed upon proof from the attending doctor that his absences had been caused by illness, hospitalization, or treatment.

In June, 1980, the employee sustained a groin injury and was hospitalized for a day. The next day, a friend (acting for the employee) called one Maloney (the employee's immediate superior in the town's cemetery division) to report that the employee would be absent from work that day. Similar reports were made of his proposed absences from work, not every day in accordance with departmental policy, but every other day. The employee reported to Maloney his doctor's advice to refrain from heavy physical work "until further notice." Permission to resume work was given by the employee's doctor on July 25, 1980.

On July 21, Paul Sullivan, the commissioner of the town's public works department since 1974, sent the employee a letter of warning that his frequent absences from work were "no longer tolerable" and that "if his attendance . . . [did] not improve," he would be suspended or discharged. The employee took this letter to Sullivan on July 25 with a doctor's report. Sullivan directed the employee to return that afternoon with his union representative. In the course of that conference, the employee "began to speak loudly concerning the unfair manner in which he claimed . . . Sullivan was treating him . . . . Sullivan decided to stop the meeting . . . got up from his chair and started to walk out." The employee grabbed Sullivan by the "arm and started swearing in a loud voice at him." Sullivan walked out unhurt, after the employee let go of him.

Thereafter on September 5, 1980, the town's selectmen by unanimous vote discharged the employee after a hearing on September 4, citing as reasons (1) insubordination and physical assault on a superior; (2) failure to observe department policies on reporting sick leave, and (3) continued absenteeism after repeated warnings. The employee appealed to the commission on September 9, 1980,[2] and the hearing officer after hearing recommended modifying the discharge to a thirty-day suspension.

The commission on January 7, 1982, adopted the hearing officer's findings of fact and affirmed the action of the appointing authority. The employee, by his attorney on March 11, 1982, sought a rehearing, supported by the attorney's affidavit. In the affidavit, the attorney described the employee as "a mentally retarded individual with an I.Q. of 62 . . . hired by the [t]own . . . in a capacity which he had an ability to perform." The commission obtained a further short report from the hearing officer, who renewed her earlier recommendation of a thirty-day suspension. Over the written objections of the town, the commission granted the motion to reconsider and "voted to affirm the action of the appointing authority but to modify the penalty to an 18-month suspension, since in certain instances the . . . [employee] had justifiable medical excuses for his absences and . . . in other instances . . . made good faith attempts to meet the sick leave reporting requirements."

In the Superior Court, the trial judge affirmed the commission[er]'s decision. The town appealed.

As was said in *Watertown* v. *Arria*, 16 Mass. App. Ct. 331, 334 (1983), "the question before the commission was not whether it would have acted as the appointing authority had acted, but whether, on the facts found by the commission, there was reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision." In the *Arria* case it was held (at 335) that the commission's findings showed "substantial and very practical reasons for discharging" the police officer there considered and that it was error of law for the commission to fail to recognize that the town, the appointing authority, had just cause to discharge the officer. The question of modification of the penalty was not presented by the *Arria* record.

Obviously, in the present case, the employee did not hold a sensitive position, involving the exercise of discretion, as did the police officer in the *Arria* case. Nevertheless, it is likely that in the present case the commission's original decision (sustaining the employee's discharge) would have

---

[2] We assume, in view of the provisions of St. 1981, c. 767, § 29 (4) and (7), an act with an emergency preamble approved January 4, 1982, that the present appeal (which was pending on the effective date of the 1981 act) is not affected by c. 767 and that these proceedings take place in accordance with G. L. c. 31, § 43, as appearing in St. 1978, c. 393, § 11. See *Watertown* v. *Arria*, 16 Mass. App. Ct. 331, 334 (1983). The provisions of the second paragraph of § 43 as modified by St. 1981, c. 767, § 20, in any event, do not appear to affect, in any now relevant respect, the earlier provisions of § 43.

been sustained on judicial review, had it remained unmodified. Obviously it is a serious action for the commission to treat as unjustified the discharge by a town of an employee who has been dismissed on grounds (found to exist) of insubordination and disruptive behavior, which may recur, and which may make very difficult any future work by the employee with superiors and· supervisors and perhaps cause disciplinary problems with other employees. We recognized, however, in *Faria* v. *Third Bristol Div. of the Dist. Court Dept.*, 14 Mass. App. Ct. 985, 986 (1982), that the commission, under G. L. c. 31, § 43, has been given power to modify penalties at least in some situations. Appellate courts, despite this power, "have not hesitated to set aside modifications of penalties ordered by the commission where the reasons for them were not supported by the record." See the *Faria* case, at 986-987, where this court ordered a remand to the commission for an adequate explanation of the reasons for modifying what the appointing authority there had done. See and compare *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston*, 359 Mass. 211, 216 (1971) and *Commissioners of Civ. Serv.* v. *Municipal Court of the City of Boston*, 369 Mass. 84, 87-90 (1975), in each of which cases the commission's decision, sustaining on sufficient evidence an employee's discharge, was approved on final appellate review (although reversed by the first reviewing court).

Despite the unduly meager explanation in the commission's second order of the reasons for revising its earlier order, such a remand is not necessary in the present case. A more complete explanation by the commission itself of its reasons for reducing the employee's discharge to a long suspension, indeed, might well have avoided the present appeal. The hearing officer's findings indicate what these reasons are. The employee with his limitations was unlikely to find any employment except in the type of job for which the town had hired him. His inability to read and other limitations had led to a noncompliance with, and possible misunderstanding of, the department's attendance policies. These policies had not been applied with complete uniformity although administered with reasonable discretion. Although a different result would have been justified on this record, the panel are not prepared to say that, as to this job involving only physical labor (and no policy making or room for discretion), the commission had no adequate basis for reducing the penalty from discharge to suspension for eighteen months.

*Judgment affirmed.*

*Robert J. Canavan* for the town of Dedham.

*Charles E. Walker, Jr.*, Assistant Attorney General, for Civil Service Commission.

*David I. Finnegan (William A. McDermott, Jr.*, with him) for the employee.