MARTIN MCISAAC vs. CIVIL SERVICE COMMISSION &
another.[1]

No. 94-P-897.

Suffolk. March 15, 1995. - May 2, 1995.

Present: BROWN, KASS, & PORADA, JJ.

*Police*, Discharge, Regulations. *Constitutional Law*, Regulation. *Practice,
Civil*, Review respecting civil service. *Civil Service*, Police, Termination
of employment, Judicial review, Decision of Civil Service Commission.
*Administrative Law*, Hearing. *Words*, "Conduct unbecoming."

In a proceeding before the Civil Service Commission, a police department
regulation defining "conduct unbecoming [a police] officer" was not un-
constitutionally vague as applied to the negligent handling of a firearm
and aggressive verbal abuse of an intoxicated police officer while on
injured leave. [474-476]
Evidence before the Civil Service Commission warranted the conclusion
that selectmen had reasonable justification for discharging a police of-
ficer and that the sanction was appropriate in the circumstances. [476]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 8, 1993.

The case was heard by *E. Susan Garsh*, J.

*Frank J. McGee* for the plaintiff.

*Everett J. Marder* for Board of Selectmen of Pembroke.

*Jonathan A. Abbott*, Assistant Attorney General, for Civil
Service Commission.

KASS, J. On the afternoon of July 20, 1991, a Saturday,
Martin McIsaac played co-host with his brother at a cookout
in Hanover. By early evening, McIsaac had become very
drunk. At the time, McIsaac was on injured leave (see G. L.
c. 41, § 111F) from the Pembroke police force because of a
back injury. Acting on advice from McIsaac's woman friend,
his brother found it wise to put him to bed. In the process of

---

[1]Board of selectmen of Pembroke.

heaving him on his bed, McIsaac's .38 caliber — duly registered — handgun spilled from under the mattress. A grapple for the weapon ensued and it fired, wounding the brother in the forearm. Someone sent for police help and when several Hanover police officers arrived, McIsaac was ungrateful for their assistance. He called them "pigs," "a bunch of pussies," and offered to "take them on one at a time." The policemen placed McIsaac in protective custody and took him in handcuffs to the Hanover police station, where he spent the night in a cell.

McIsaac's caper caused the selectmen of Pembroke to discharge him from the Pembroke police force for conduct unbecoming a police officer, an action which McIsaac took before the Civil Service Commission. The commission affirmed the action of the selectmen. In so doing, the commission declined to follow a recommendation of an administrative law appeals magistrate to reduce the sanction against McIsaac from discharge to a thirty-day suspension. "The issue," the commission wrote in its decision, "is not whether the [c]ommission would have discharged the [a]ppellant, but whether, on the facts found, there was reasonable justification for the action taken by the [a]ppointing [a]uthority in the circumstances found by the [c]ommission to exist at the time the [a]ppointing [a]uthority made its decision." From that adverse decision, McIsaac sought judicial review in Superior Court pursuant to G. L. c. 30A, § 14. A judge of that court affirmed the order of the commission, explaining her judgment with a careful and well-reasoned memorandum of decision.

1. *Constitutionality of the regulation under which Mc-Isaac was disciplined.* Throughout the judicial portion of the proceedings, McIsaac has attacked the Pembroke police department regulation invoked against him as unconstitutionally vague. Departmental regulation, art. G(9), defines "conduct unbecoming an officer," as "[t]he commission of any specific act or acts of immoral, improper, disorderly or intemperate personal conduct which reflects discredit upon the officer himself, upon his fellow officers or upon the Police De-

partment." Whatever difficulty might arise with application of this language in some fringe situation, the circumstances in which it was applied in this case do not render the regulation uncertain and thereby unconstitutional. See *Parker* v. *Levy*, 417 U.S. 733, 754-756 (1974); *United States* v. *Powell*, 423 U.S. 87, 92 (1975); *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 715 (1990); *United States* v. *McElroy*, 910 F.2d 1016, 1021 (2d Cir. 1990).

An officer of the law carries the burden of being expected to comport himself or herself in an exemplary fashion. In that context, the adjectives "immoral," "improper," "disorderly," and "intemperate" have meaning. Negligent handling of a firearm while drunk and aggressive verbal abuse (this is not a case of reasoned criticism or expression of a point of view) of police officers is in common understanding improper, disorderly, and intemperate. Such conduct is surely an embarrassment to a police force and, hence, does not become a police officer. For decisions that have reached the conclusion that "conduct unbecoming" regulations of police departments satisfy constitutional requirements, see *Allen* v. *Greensboro*, 452 F.2d 489, 491 (4th Cir. 1971); *Kannisto* v. *San Francisco*, 541 F.2d 841, 844-845 (9th Cir. 1976), cert. denied, 430 U.S. 931 (1977); *Flanagan* v. *Munger*, 890 F.2d 1557, 1569-1570 (10th Cir. 1989); *Civil Serv. Commn. of Tuscon* v. *Livingston*, 22 Ariz. App. 183, 187-188 (1974); *Cranston* v. *Richmond*, 40 Cal. 3d 755, 762-772 (1985); *Pulzick* v. *Colorado Springs*, 680 P.2d 1283, 1286-1287 (Colo. Ct. App. 1983); *Atkinson* v. *Marion*, 411 N.E.2d 622, 625-627 (Ind. Ct. App. 1980); *Millsap* v. *Cedar Rapids Civil Serv. Commn.*, 249 N.W.2d 679, 683-686 (Iowa 1977); *Beeler* v. *Behan*, 55 Md. App. 517, 523-524 (1981); *Sims* v. *Baer*, 732 S.W.2d 916, 921-922 (Mo. Ct. App. 1987); *Fabio* v. *Civil Serv. Commn. of Pa.*, 489 Pa. 309, 314-322 (1980). Contrast *Bence* v. *Breier*, 501 F.2d 1185, 1190, 1193-1194 (7th Cir. 1974), cert. denied, 419 U.S. 1121 (1975), in which a "conduct unbecoming" standard was held to be impermissibly vague when applied to the speech of police officers.

What those officers had done was post on several bulletin boards a letter they had written to their city's labor negotiator outlining a proposed bargaining demand.

2. *Sufficiency of the commission's decision.* The questions before the commission were whether the selectmen had a reasonable justification for discharging McIsaac, and whether the sanction of discharge was justifiable. *Watertown* v. *Arria*, 16 Mass. App. Ct. 331, 334-335 (1983). McIsaac had acted dangerously, violently, and profanely. Police officers are held to a higher standard than refraining from indictable conduct. *Police Commr. of Boston* v. *Civil Serv. Commn.*, 22 Mass. App. Ct. 364, 371 (1986). As we said in that opinion, they are not drafted into the public service. There was, therefore, evidence which warranted McIsaac's discharge. That the offense occurred in his home, when he was not on duty, and that his previous record had been free of disciplinary incidents are factors that the selectmen and the commission could, in discretion, consider, but those factors do not compel a lesser sanction than the one the selectmen decided upon. The commission could properly determine that the sanction chosen by the selectmen was within appropriate limits. G. L. c. 31, § 43. *Faria* v. *Third Bristol Div. of the Dist. Court*, 14 Mass. App. Ct. 985, 986 (1982). The judge had the limited task of examining whether there was substantial evidence in support of the commission's decision. It was not for the court to substitute its judgment on questions of fact or exercise of discretion. *Southern Worcester County Regional Sch. Dist.* v. *Labor Relations Commn.*, 386 Mass. 414, 420-421 (1982).

3. *Hearing before a disinterested hearing officer.* McIsaac misreads G. L. c. 31, § 41A. That statute does not require proceedings before a disinterested hearing officer in place of the appointing authority; rather it authorizes such a hearing if *both* sides so elect. There is no nonstatutory right to a hearing, in the first instance, before a disinterested hearing officer. See *Mayor of Everett* v. *Superior Court*, 324 Mass.

144, 151 (1949); *Wilson* v. *Brookline Hous. Authy.*, 383 Mass. 878, 879 (1981).

*Judgment affirmed.*