SCHOOL COMMITTEE OF BROCKTON *vs.* CIVIL SERVICE
COMMISSION & another.[1]

No. 96-P-183.

Plymouth. March 20, 1997. - September 11, 1997.

Present: WARNER, C.J., KASS, & JACOBS, JJ.

*Practice, Civil,* Review respecting civil service. *Civil Service,* Decision of
Civil Service Commission, Termination of employment, Judicial review.
*Administrative Law,* Judicial review, Substantial evidence. *School and
School Committee,* Custodian, Suspension from employment, Termination
of employment.

Discussion of the "just cause" standard set forth in G. L. c. 31, § 41, for
discharge or suspension of a tenured employee. [488]
The record of a proceeding before the Civil Service Commission supported its
conclusion that a school superintendent had not demonstrated just cause
for the termination of a custodian's employment based on his arrest for
committing an unnatural act in a public park not during work hours, where
there was no connection between that conduct and the custodian's fitness
to perform his duties. [489-492]
The Civil Service Commission acted within its authority pursuant to G. L.
c. 31, § 43, to modify a penalty imposed on a school custodian by the
superintendent of schools for the custodian's missing a day of work on ac-
count of his having been arrested. [492]

CIVIL ACTION commenced in the Superior Court Department on
December 17, 1993.

The case was heard by *Patrick F. Brady,* J.

*Michael F. Manning* for the defendants.

*Edward F. Lenox, Jr.,* for the plaintiff.

*Mary L. Bonauto & Betsy Ehrenberg,* for Gay & Lesbian
Advocates & Defenders, amicus curiae, submitted a brief.

JACOBS, J. After an evidentiary hearing, the superintendent of
schools for the city of Brockton terminated the employment of
Ralph W. Wise as a school department custodian. The hearing

[1]Ralph W. Wise.

had been convened "to hear evidence concerning the allegation that . . . unnatural acts . . . were committed by [Wise] and a companion in broad daylight in Brockton's D.W. Field Park. . . ." In arriving at his decision, the superintendent concluded that Wise's conduct was "inappropriate and unbecoming a Brockton School Department employee."

Wise appealed his discharge pursuant to G. L. c. 31, § 43, to the Civil Service Commission (commission), which assigned the matter for hearing before the Division of Administrative Law Appeals. A magistrate conducted an evidentiary hearing after which he made subsidiary findings of fact, *infra*, and concluded that "Mr. Wise engaged in [a] homosexual act in a public park. At that time he was not on the job, was not being paid . . . , was not on school grounds, and with a consenting adult over 60 years of age. There is no evidence that Mr. Wise was or is a threat to the children attending the Brockton Public Schools." He further concluded that "there is no significant correlation between Mr. Wise's conduct in D.W. Field Park and his employment . . . , nor that this conduct impairs the 'efficiency of the public service.' " Because, however, Wise's conduct resulted in his arrest and an unexcused absence from work for one day, creating a hardship for the school department, the magistrate concluded that there was just cause to discipline him. In light of a past history of attendance problems, he recommended that the order discharging Wise be modified to a one-year suspension.

Relying upon the magistrate's findings, the commission affirmed "the action of the Appointing Authority in disciplining" Wise while at the same time accepting the recommendation of a modification of penalty. The school committee of Brockton then brought an action in the Superior Court naming Wise and the commission as defendants and seeking a review of the commission's decision pursuant to G. L. c. 31, § 44, and G. L. c. 30A, § 14.[2] Upon review of the administrative record, a judge determined that the commission erred as matter of law. The judge determined there was "nothing in the Commission's findings to justify the reduction of Wise's penalty from discharge to suspension" and ordered that judgment enter reversing the decision of the commission and affirming the decision of the committee. Only Wise has appealed from the ensuing judgment.

---

[2]There being no contrary contention, we treat the superintendent and the school committee collectively as the appointing authority and the aggrieved party.

488       43 Mass. App. Ct. 486 (1997)

School Committee of Brockton *v.* Civil Service Commission.

*Discharge standard.* Wise, being tenured, could not be discharged or suspended except for "just cause." G. L. c. 31, § 41. In reviewing the superintendent's decision, the commission was obliged to determine whether he had sustained his burden of proving just cause for terminating Wise's employment by a fair preponderance of the evidence. G. L. c. 31, § 43. *Gloucester* v. *Civil Serv. Commn.*, 408 Mass. 292, 297 (1990). Pursuant to G. L. c. 31, § 44, as inserted by St. 1992, c. 133, § 351, the appeal to the Superior Court from the decision of the commission is "governed by the provisions of section fourteen of chapter thirty A."

The term "just cause" must be construed in light of the purpose of the civil service legislation in which it appears. That purpose is "to free public servants from political pressure and arbitrary separation . . . but not to prevent the removal of those who have proved to be incompetent or unworthy to continue in the public service." *Cullen* v. *Mayor of Newton*, 308 Mass. 578, 581 (1941). "[I]n order to carry out the legislative purpose, the appropriate inquiry is whether the employee has been guilty of substantial misconduct which adversely affects the public interest by impairing the efficiency of the public service." *Murray* v. *Second Dist. Ct. of E. Middlesex*, 389 Mass. 508, 514 (1983).[3] *Cambridge* v. *Civil Serv. Commn.*, *ante* 300, 304 (1997).

*Factual background.* In the absence of a contention that facts found by the magistrate and adopted by the commission are unsupported by substantial evidence, see G. L. c. 30A, § 14(7)(*e*), the requisite judicial inquiry is governed by those findings. See *Murray* v. *Second Dist. Ct. of E. Middlesex*, *supra* at 515; *McIsaac* v. *Civil Serv. Commn.*, 38 Mass. App. Ct. 473, 474 (1995). We set forth the pertinent subsidiary findings of fact.

> "1) Appellant, Ralph W. Wise, had been employed with the Brockton Public Schools as a custodian for fifteen years.
>
> 2) In October of 1990 Mr. Wise was disciplined by Brockton Public Schools and was suspended from his job for a period of thirty-five days.

---

[3]While this test was enunciated under the review provisions of G. L. c. 31, § 44, as inserted by St. 1978, c. 393, § 11, those provisions are substantially similar to the standards of review set forth in G. L. c. 30A, § 14(7)(*a*)-(*g*).

3) In September of 1992 Mr. Wise was assigned to the Gilman School on the 3-11 P.M. shift. The school houses grades 1-6.

4) On Friday, September 11, 1992 Mr. Wise was arrested at 1:45 P.M. and charged with engaging in unnatural acts at the D.W. Field Park in Brockton.

5) Arrested with Mr. Wise was one, William Sheldon, a male over 60 years of age.

6) Officer John Carr of the Brockton Park Police observed Mr. Wise and Mr. Sheldon in the woods. He observed Mr. Wise standing with his pants pulled down and his penis exposed. The other male, Mr. Sheldon, was kneeling in front of Mr. Wise with his mouth on Mr. Wise's penis performing oral sex on him.

7) Due to his observations Officer Carr arrested both Mr. Wise and Mr. Sheldon and charged them with violating M.G.L. Ch. 272 sec. 35 committing unnatural acts.

8) Mr. Sheldon stated to Officer Carr after the arrest 'I was giving him a blow job, my mouth was on his penis.'

9) Due to the arrest Mr. Wise was not able to work his shift on Friday, September 11.

10) As a result of the arrest Mr. Wise's name, address and criminal charge were printed in the local newspaper.

11) The criminal charge against Mr. Wise was dismissed, in or about February, 1993, although Officer Carr is trying to have it reinstated."

*Discussion.* The duty of the commission was to apply the facts found to determine whether "there was reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision." *Watertown* v.

*Arria,* 16 Mass. App. Ct. 331, 334 (1983).[4] In reviewing the action of the commission, "[t]he judge had the limited task of examining whether there was substantial evidence in support of the commission's decision. It was not for the court to substitute its judgment on questions of fact or exercise of discretion." *McIsaac* v. *Civil Serv. Commn.,* 38 Mass. App. Ct. at 476. Presented with a question of law,[5] "[w]e need only inquire whether the commission's decision was 'legally tenable.' " *Gloucester* v. *Civil Serv. Commn,* 408 Mass. 297, quoting from *Commissioner of Health & Hosps. of Boston* v. *Civil Serv. Commn.,* 23 Mass. App. Ct. 410, 411 (1987). That inquiry must accord due deference and weight not only to the commission's "experience, technical competence, and specialized knowledge" but also "to the discretionary authority conferred upon it." G. L. c. 30A, § 14, as appearing in St. 1973, c. 1114.

The judge correctly observed that "private sexual conduct is not at issue" in this case. While the commission adopted the conclusory finding of the magistrate that Wise's "homosexual act" occurred in a "public park," and there is a subsidiary finding indicating that Wise was in the woods of that park, no defense appears to have been made before the magistrate, nor does Wise argue to us, that the conduct in question occurred in an essentially private setting.[6] Compare *Commonwealth* v. *Nicholas,* 40 Mass. App. Ct. 255 (1996). Also, he makes no claim that the dismissal of the criminal charge is a bar to disciplinary action. At the magistrate's hearing, Wise's defenses were that (1) he did not engage in the conduct of which he was accused and (2) even if he had, the action of the school committee was excessive. On appeal, he principally argues that the commission's decision was not an abuse of discretion.

---

[4]Although the quoted language derives from a decision interpreting an earlier version of G. L. c. 31, § 43, nothing in the current version of that section indicates that the task of the commission has been altered.

[5]The parties submitted a joint pretrial memorandum to the Superior Court indicating there were no contested issues of fact.

[6]The brief submitted by the amicus curiae devotes considerable attention to whether the conduct of which Wise is accused reasonably could be construed as having occurred in a public setting. Also, responding to arguments made in the school committee's brief, the amicus brief argues that "possible biases of co-workers based on homophobia cannot rise to the level of impairment of the public interest." Our decision renders it unnecessary that we determine whether to address these nonjurisdictional issues raised solely in an amicus brief. Compare *Bradford* v. *Baystate Med. Center,* 415 Mass. 202, 209 n.9 (1993).

Pivotal to the commission's decision was its adopted conclusion that no "significant correlation" or "nexus" existed between Wise's conduct in D.W. Field Park and his employment. The judge rejected this nexus analysis and relied entirely upon the test recited in *Murray* v. *Second Dist. Ct. of E. Middlesex*, 389 Mass. at 514, of whether the employee misconduct "adversely affects the public interest by impairing the efficiency of the public service." That case, however, analyzed review provisions under portions of c. 31, as amended in 1978. See note 3, *supra*. It did not take into account the proviso in G. L. c. 31, § 43, as amended by St. 1981, c. 767, § 20, which states that if an employee establishes that the appointing authority's action was based "upon any factor or conduct on the part of the employee not reasonably related to the fitness of the employee to perform in his position, said action shall not be sustained. . . ." Not only is it reasonable to interpret this amendment to the statute as inserting a nexus test but it is also arguable that without such a test the natural tension between municipal managerial discretion and commission statutory oversight too frequently might be resolved by giving undue judicial deference to local political or nonemployment considerations in the name of protecting the "efficiency of the public service." The magistrate's observation that no evidence was presented of Wise being a threat to school children, coupled with his conclusion, adopted by the commission, of an absence of significant correlation between Wise's conduct and his employment indicates that the commission was satisfied that Wise had established that his discharge was based on factors unrelated to his fitness to perform his custodial duties.

Implicit in the magistrate's conclusion that Wise's conduct did not impair public service is the apparent absence[7] of any hearing evidence of the effect of Wise's continued employment upon other school department employees or upon the children or parents with whom Wise may come into contact or of the impact of the news of his arrest upon any of those persons. Compare *Norton* v. *Macy*, 417 F.2d 1161, 1166-1167 (D.C. Cir. 1969) ("A reviewing court must at least be able to discern some reasonably foreseeable, specific connection between an employee's . . . conduct and the efficiency of the service"). Contrast *Wathen* v. *United States*, 527 F.2d 1191, 1197 (Ct. Cl.

---

[7]The record does not contain a transcript of the hearing before the magistrate.

1975), cert. denied, 429 U.S. 821 (1976). There is no indication that the trust imposed upon him by his custodial position is such as to render virtually any public indiscretion sufficient to support discharge, as in the case of a police officer. Compare *Dedham* v. *Civil Serv. Commn.*, 21 Mass. App. Ct. 904, 906-907 (1985), with *Police Commr. of Boston* v. *Civil Serv. Commn.*, 22 Mass. App. Ct. 364, 370-371 (1986). In dealing with an interest as fundamental and important as an employee's work tenure, an appointing authority has the responsibility, when challenged before the commission, to present evidence specifically and rationally justifying its action. In the absence of a relevant regulation or explicit job standards, a rubric describing conduct as "inappropriate and unbecoming," even if generally accurate and applied in good faith, is insufficient to justify discharge. Compare *McIsaac* v. *Civil Serv. Commn.*, 38 Mass. App. Ct. at 474-475 (a police officer was charged with violation of a regulation explicitly defining "conduct unbecoming an officer"). Here, there is no evidence that the commission has forced an unreasonable risk upon the school committee. Compare *Watertown* v. *Arria*, 16 Mass. App. Ct. at 336; *Cambridge* v. *Civil Serv. Commn.*, *supra* at 305.

In a limited sense, the magistrate discerned a nexus between Wise's "unbecoming" conduct, and the day of work missed by him as a result of his arrest for that conduct. Finding that this absence created a hardship for the school department, and in light of Wise's past history of attendance problems, the magistrate recommended a modification of the discharge to a one-year suspension. In adopting this recommendation, the commission acted well within the statutory authority of G. L. c. 31, § 43, which permits it to "modify any penalty imposed by the appointing authority." On the evidence presented, its decision does not appear to reflect a misunderstanding of Wise's role in the school department or to be so capricious as to require reversal in the public interest. *Police Commr. of Boston* v. *Civil Serv. Commn.*, 22 Mass. App. Ct. at 370-371. The reasons for its action are supported by the record of Wise's previous disciplinary suspension viewed in the light of his past service. Compare *Faria* v. *Third Bristol Div. of the Dist. Ct. Dept.*, 14 Mass. App. Ct. 985, 986 (1982). Accordingly, we order that the judgment of the Superior Court be vacated and that judgment enter affirming the decision of the commission.

*So ordered.*