POLICE DEPARTMENT OF BOSTON *vs.* JOHN COLLINS
& another.[1]

No. 97-P-1844.

Suffolk. April 6, 1999. - January 6, 2000.

Present: ARMSTRONG, DREBEN, & GILLERMAN, JJ.

*Police,* Suspension. *Public Employment,* Police, Misconduct, Suspension. *Civil Service,* Police, Decision of Civil Service Commission, Judicial review.

The Civil Service Commission was without authority to substitute its judgment in a disciplinary proceeding for that of the police commissioner to overrule the conclusions of the commissioner that a police officer had violated departmental rules of conduct and that there was just cause to impose a five-day suspension on the officer. [411-413]

CIVIL ACTION commenced in the Superior Court Department on March 14, 1996.

The case was heard by *Charles T. Spurlock,* J.

*Vida K. Berkowitz* for John Collins.

*Mary Jo Harris* for the plaintiff.

ARMSTRONG, J. For allegedly violating the Boston police department's (department's) rules regarding disrespectful treatment and conduct unbecoming an officer, the department imposed a five-day suspension on police Lieutenant John Collins. The Civil Service Commission (commission) vacated the suspension, but on judicial review the Superior Court reinstated the department's decision. Lieutenant Collins has appealed.

The findings of an administrative magistrate, adopted by the commission, are not disputed on appeal. The suspension arose from an altercation involving Collins and his superior, Deputy Superintendent William Johnston,[2] between whom relations

---

[1]The Civil Service Commission, which has not participated in this appeal.

[2]Despite some confusion in the proceedings below, the Deputy Superintendent's correct surname appears from the record and the briefs to be "Johnston," not "Johnson."

were strained. Collins, an officer with a previously unblemished record of twenty-seven years of service, was in charge of the mobile operations unit, a part of the special operations division of the bureau of field services. In May, 1994, Johnston had been appointed to head the special operations division. Thereafter, Collins lost his clerk, his large office space, and one of his two portable phones.

Prior to Johnston's arrival, it had been the practice that the superior officer of a detail would work an additional half-hour of overtime before or after the detail to do the related paperwork. (Due to overtime, Collins was one of the highest paid officers in the Boston police force.) After Johnston's arrival, he spoke with Collins in an effort to curb this practice, and they agreed to limit to one or two the number of supervising officers taking such additional overtime, unless more were needed.

Johnston also was concerned that Collins was amassing, and using in large blocks, excessive time off in the form of "E days" and "W/O days." "E days" are earned days specified by the collective bargaining agreement under which, for example, an officer working a five days on, two days off, schedule would earn an additional day off every third week in order to parallel the time off of officers working a four days on, two days off, schedule. A "W/O day" is earned for working a day out of turn or working an extra tour of duty. Without notifying Collins, Johnston wrote a letter in August, 1994, to the superintendent of the bureau of field services to express his concern about these practices, admitting, however, that Collins was not violating any rules or procedures.

On September 28 and 29 of 1994, the bureau of field services assigned Collins to provide security for a dignitary and also ordered him to institute a full call-up for a rock music concert and to have officers available for a demonstration at the South Boston Courthouse. For several days, Collins had been working up to eighteen hours a day and was, in the administrative magistrate's words, "over-tired and over-stressed." On September 29, Johnston summoned Collins to his office for a private meeting, which Johnston began by asking why certain supervisors had been given an extra half-hour of overtime on September 28 and 29 in disregard of their prior understanding on the overtime issue. Collins, who had not been present to

supervise the overtime because he was on the dignitary detail, stated that he would look into the matter. Johnston then questioned the excessive length of time the officers had been working, and Collins responded that he had received the orders over the last two days directly from the bureau of field services, that this was the way things had always been done, and that the officers were capable of handling the extra hours. Johnston's testimony acknowledged that his usual authority to limit the hours of officers in his command did not apply when extra duty functions were, as here, ordered by the bureau of field services.

Over the course of the meeting, unwitnessed by others, the conversation became heated. On at least two occasions, Collins replied rudely to Johnston's questions, using inappropriately colloquial language. Johnston prepared a notice of suspension asserting that Collins had been guilty of conduct unbecoming a member of the department and use of incivility and epithets in violation of department rule 102, §§ 3 and 9.[3,4] After a hearing before a departmental hearing officer, the police commissioner found that Collins had indeed violated the cited police rules and upheld the five-day suspension.

On appeal under G. L. c. 31, § 43, to the commission, the administrative magistrate concluded that "[Lieutenant Collins's] conduct during the meeting was not justified. However, taking into consideration the circumstances surrounding the incident, the fact that in over twenty-seven years he has not been

---

[3]The cited sections of department rule 102 read as follows:

"Sec. 3 CONDUCT: Employees shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Conduct unbecoming an employee shall include that which tends to indicate that the employee is unable or unfit to continue as a member of the Department, or tends to impair the operation of the Department or its employees."

"Sec. 9 RESPECTFUL TREATMENT: Employees shall, on all occasions, be civil and respectful, courteous and considerate toward their supervisors, their subordinates, and all other members of the Department and the general public. No employee shall use epithets or terms that tend to denigrate a particular race or ethnic group except when necessary in police reports or in testimony."

[4]The notice to Collins charged: "[Y]ou were disrespectful, discourteous, and inconsiderate to your superior . . . in your speech and behavior while on duty and discussing administrative responsibilities relative to your position. Your statements in response to my inquiries [were] not limited to, but included, 'Fuck you!' and 'yea, dismissed!!, Fuck you!, Who do you think you're talking to?' "

disciplined, and has been transferred out of mobile operations,[5] I recommend that the five-day suspension be removed from Lt. Collins' file." The commission adopted the magistrate's decision. In reversing the decision of the commission, the judge reasoned that the department had just cause to determine that Collins violated at least two departmental rules and that the suspension did not "appear to be out of proportion to the offenses."

The decision of the judge was correct. As a tenured officer, Collins could be suspended for "just cause," G. L. c. 31, § 41, a phrase judicially defined as "substantial misconduct which adversely affects the public interest by impairing the efficiency of the public service." *Police Commr. of Boston* v. *Civil Serv. Commn.*, 39 Mass. App. Ct. 594, 599 (1996), quoting from *Murray* v. *Second Dist. Ct. of E. Middlesex*, 389 Mass. 508, 514 (1983). The role of the commission was to determine whether the department proved, by a preponderance of evidence, just cause for the action taken. See G. L. c. 31, § 43[6]; *School Comm. of Brockton* v. *Civil Serv. Commn.*, 43 Mass. App. Ct.

[5]The magistrate found that Collins was transferred from the mobile operations unit but made no finding as to when that occurred or why. No evidence supports Collins's contention that the transfer was itself punitive and that the commission's reversal of the suspension was thus a downward adjustment in punishment rather than an outright rejection of any and all punishment. In pressing this argument, Collins invokes a distinction drawn in some decisions between the commission's power to modify a penalty imposed by an appointing authority, where the commission appears to have considerable discretion, see *Faria* v. *Third Bristol Div. of the Dist. Ct. Dept.*, 14 Mass. App. Ct. 985, 986 (1982); *Cambridge* v. *Civil Serv. Commn.*, 23 Mass. App. Ct. 936, 937 (1986); *Police Commr. of Boston* v. *Civil Serv. Commn.*, 39 Mass. App. Ct. 594, 600 (1996), and its perhaps more limited authority to reject outright an appointing authority's threshold decision to impose discipline in any degree. In the latter category, see *Watertown* v. *Arria*, 16 Mass. App. Ct. 331, 334 (1983), where "the question before the commission was not whether it would have acted as the appointing authority had acted, but whether, on the facts found by the commission, there was reasonable justification for the action taken by the appointing authority." See also *Dedham* v. *Civil Serv. Commn.*, 21 Mass. App. Ct. 904, 906 (1985). Whatever the merits of the distinction, on the record before us this is not a case of penalty modification.

[6]Our decisions have not treated the 1981 amendment of G. L. c. 31, § 43, St. 1981, c. 767, § 20, which utilized the phrase "just cause" in place of the term "justified," as altering the previously existing standard for the commission's review of the appointing authority's action. The preamendment precedents interpreting that standard are fully applicable to the postamendment cases. See *Dedham* v. *Civil Serv. Commn.*, 21 Mass. App. Ct. 904, 906 n.2 (1985); *Cambridge* v. *Civil Serv. Commn.*, 43 Mass. App. Ct. 300, 303-

486, 488 (1997). "In making that analysis, the commission must focus on the fundamental purposes of the civil service system — to guard against political considerations, favoritism, and bias in governmental employment decisions . . . and to protect efficient public employees from political control. When there are, in connection with personnel decisions, overtones of political control or objectives unrelated to merit standards or neutrally applied public policy, then the occasion is appropriate for intervention by the commission. It is not within the authority of the commission, however, to substitute its judgment about a valid exercise of discretion based on merit or policy considerations by an appointing authority." *Cambridge* v. *Civil Serv. Commn.*, 43 Mass. App. Ct. 300, 304 (1997) (citations omitted).

This is not a case where the commission found that bias directed against the particular employee improperly factored into the appointing authority's course of action. The commission made no finding that the strained relations or the time-off or overtime-related differences between Johnston and Collins played any causal or motivating role in the department's ultimate disciplinary decision. See *Mayor of Revere* v. *Civil Serv. Commn.*, 31 Mass. App. Ct. 315, 322 (1991). Nor did the commission determine that the five-day suspension "singled out [Collins] for punishment more harsh or unusual than otherwise imposed in like circumstances."[7] *Police Commr. of Boston* v. *Civil Serv. Commn.*, 39 Mass. App. Ct. at 601. See *id.* at 600 (noting importance of "uniformity and the equitable treatment of similarly situated individuals"); G. L. c. 31, § 1 (defining "basic merit principles" in part as "assuring that all employees are . . . protected from arbitrary and capricious actions"). Nothing in the commission's decision indicates that the disciplining of Collins was anything other than a "valid exercise of discretion based on merit or policy considerations by an ap-

---

304 & n.3 (1997); *School Comm. of Brockton* v. *Civil Serv. Commn.*, 43 Mass. App. Ct. 486, 490 n.4 (1997).

[7]The numerous published decisions of the commission cited by Collins in an effort to show disproportionate punishment mostly involve ostensibly more serious violations that also draw suspensions of five days or fewer. Some of these decisions do not involve police officers, and those that do appear to involve officers of lesser rank and seniority. The difficulty with the argument is that a reviewing agency cannot properly undertake to do fine adjustments in suspensions of five days or fewer without unduly encroaching on the discretion of the appointing authority.

pointing authority." *Cambridge* v. *Civil Serv. Commn.*, 43 Mass. App. Ct. at 304.

Police rules of conduct and their enforcement are policy matters that, absent "overtones of political control or objectives unrelated to merit standards or neutrally applied public policy," *ibid.*, are beyond the commission's reach. By engaging in a heated conversation with and cursing at a superior officer, Collins violated departmental rules of conduct by engaging in "substantial misconduct which adversely affect[ed] the public interest by impairing the efficiency of the public service." *Murray* v. *Second Dist. Ct. of E. Middlesex*, 389 Mass. at 514. The decision to impose discipline for violating those rules, even where the gravity of the offense appears mitigated by its occurring out of earshot of others and under trying circumstances involving stress, lack of sleep, and personal ill feeling, is a matter of policy for the appointing authority. The police department has "substantial and very practical reasons," *Watertown* v. *Arria*, 16 Mass. App. Ct. 331, 335 (1983), for penalizing an officer in such a case, even a twenty-seven year veteran who has already been transferred from under the supervisor's control — namely, to enforce the highest norms of decorum in a department that depends on discipline under conditions of stress. We have previously noted the high standard of conduct required of police officers and the need for the commission to respect that standard. See *Police Commr. of Boston* v. *Civil Serv. Commn.*, 22 Mass. App. Ct. 364, 370-371 (1986).

The commission's decision impermissibly substituted its judgment for that of the appointing authority. See *Watertown* v. *Arria*, 16 Mass. App. Ct. at 334; *Cambridge* v. *Civil Serv. Commn.*, 43 Mass. App. Ct. at 304. Under the facts found by the commission, it was an error of law not to conclude that the department had just cause to impose discipline. The Superior Court acted correctly in reinstating the suspension of Lieutenant Collins.

*Judgment affirmed.*