TOWN OF FALMOUTH *vs.* CIVIL SERVICE COMMISSION
& another.[1]

No. 03-P-941.

Suffolk. May 10, 2004. - September 9, 2004.

Present: LENK, KAFKER, & GREEN, JJ.

*Civil Service,* Decision of Civil Service Commission. *Police,* Suspension.

This court concluded that the defendant Civil Service Commission improperly
    substituted its judgment for that of the appointing authority when it reduced
    the suspension of a police officer disciplined by his employing town for
    conduct unbecoming an officer and untruthfulness from ten to five days,
    based on the commission's conclusion that certain acts that the town found
    supported the charges were not proved to the commission's satisfaction,
    where there were no findings of political considerations, other improper
    bias, or inequitable treatment, where the town's decision involved a
    discretionary disciplinary decision regarding the enforcement of important
    standards of conduct, and where the charges for which discipline had been
    imposed were still satisfied by the remainder of the inappropriate conduct.
    [800-803]

CIVIL ACTION commenced in the Superior Court Department on
November 21, 2001.

The case was heard by *Jeffrey A. Locke,* J., on a motion for
judgment on the pleadings.

*Tim D. Norris* for the plaintiff.

*Douglas I. Louison* for the defendants.

KAFKER, J. After a disciplinary hearing pursuant to G. L. c. 31,
§ 41, the town of Falmouth suspended police officer Theodore
Williams for ten days for conduct unbecoming an officer and
untruthfulness.[2] On appeal, the Civil Service Commission (com-
mission) also essentially found conduct unbecoming an officer
and untruthfulness, but nonetheless reduced the suspension from

---

[1]Theodore Williams.

[2]The town's decision was issued by the town administrator.

ten days to five because not all the objectionable conduct found by the town had been proved to the commission. The commission made no findings suggesting that political considerations or bias played any part in the town's decision. The issue presented is whether the commission has substituted its judgment for the town and exceeded its authority. We conclude that it has and therefore reverse the decision of the Superior Court affirming the commission.

*Facts.* At the time of the altercation at issue, Peter Haddad was the live-in boyfriend of Officer Theodore Williams's ex-wife. On February 2, 2000, Haddad was dropping one of Williams's sons off at the town ice rink for hockey practice when Williams confronted him. The usual practice, not followed that day to Williams's dismay, was for Williams to pick his son up at his ex-wife's home, when off-duty, and drive him to the rink. During the confrontation, Williams threatened Haddad and launched into a profane tirade, yelling vulgarities and various insults, all within the earshot of children and their parents.

The town administrator found that Williams spat on Haddad. The commission concluded, however, that there was "insufficient" evidence to support this finding. Although Haddad testified to Williams's spitting on his cheek, another witness did not see the spitting, and a different witness only testified to seeing a spitting motion.

After entering the rink, Haddad called the Falmouth police department, and Sergeant Jeffrey Smith was sent to the rink to investigate the incident. When questioned, Williams denied seeing Haddad that day. Although Smith advised both men to avoid further contact, the confrontation was renewed when the men exited the rink.

Haddad contends that Williams turned and "propelled" his son's hockey equipment bag at him. The commission and the town administrator made different findings on this point. The administrator found that "Officer Williams threw the hockey bag he was holding at Mr. Haddad, hitting Mr. Haddad in the chest. Although Officer Williams needed to transfer the hockey bag to Mr. Haddad, he did not need to throw the hockey bag at Mr. Haddad." The commission found that Williams, "who had his son's equipment bag on his shoulder, turned and intended to

throw the bag to the ground. Because Haddad was so close to [Williams] the bag struck him."

Later that day, Haddad filed a civilian complaint against Williams. Williams was then "ordered to complete a report detailing [his] knowledge of the allegations." Williams responded, stating that Haddad's allegations were false and expressing his hope that "the complaint of perjury would be brought against Mr. Haddad." After receiving Williams's report, Captain O'Neill wrote to the officer, emphasizing that his report failed to answer the allegations in the complaint. Williams then acknowledged that he "did engage in a short conversation with Peter Haddad" as the two exited the hockey rink and that he called him a coward. Williams admitted that he threw the hockey bag to the ground in frustration, but denied intending to hit Haddad with it and also denied cursing at him, threatening him, or spitting on him.

The town administrator found "the charges against Officer Williams were sustained by the evidence presented." The town administrator rejected the argument that this was a private matter between Haddad and Williams, concluding that "Officer Williams displayed this conduct within the Town of Falmouth in front of Falmouth citizens, who know that he is a police officer." Although viewing the officer's "difficult personal circumstances as a mitigating factor," those circumstances were not found to "excuse" the officer's tirade. The town administrator concluded that the "Town has a right to expect that its police officers will exhibit self control and refrain from engaging in threatening and intimidating conduct. I find that Officer Williams'[s] behavior was conduct unbecoming a Falmouth police officer and deserving of a suspension."[3]

The town administrator also considered the allegations of untruthfulness, noting that "[a] breach of the standard of truthfulness is a serious offense for a police officer.[4] The Town

---

[3]Conduct unbecoming an officer is defined by the Falmouth police department as the "commission o[f] any specific act or acts of immoral, improper, disorderly or intemperate personal conduct which reflects discredit upon the officer himself, upon his fellow officers, or upon the Police Department."

[4]According to department policy, an "officer shall truthfully state the facts in all reports as well as when he appears before any judicial, departmental or

needs to be able to rely upon its police officers to provide truthful information . . . [and] courts need to be able to rely on the testimony of police officers . . . . When a police officer lies, it has a negative impact on the credibility of the entire department." The administrator found that Williams initially lied to Sergeant Smith when Smith came to the rink to investigate; Williams told Smith that he had not seen Haddad that day. Further, Williams "compounded his mistake by making a false official report to Captain O'Neill." The administrator found "nothing in the facts presented . . . to mitigate Officer Williams'[s] breach of the standard of truthfulness." In conclusion, the town administrator found that "these offenses warrant a 10 day suspension."

Pursuant to G. L. c. 31, § 43, Williams appealed his suspension to the commission, which determined that "[d]iscipline is warranted in this matter." The commission found that Williams insulted, yelled, and cursed at Haddad. The commission ruled that Williams's "conduct on February 2, 2000, was inappropriate. He lied to his superiors when asked about the incident." However, "[b]ased on the facts found, and the fact that there was evidence of only one prior discipline in 1991[,] . . . and that not all of the charges ha[d] been prove[d], the Commission modifie[d] the discipline imposed to a five (5) day suspension."[5] The commission went on to state that the officer is "now on notice that such conduct is unacceptable."

The town sought judicial review of the commission's decision in Superior Court pursuant to G. L. c. 31, § 44, and c. 30A, § 14. In upholding the commission's modification, the Superior Court judge relied on the commission's "considerable" authority to modify the sanction, writing "[f]or better or worse, the Town's commendable desire to hold its police officers to the highest standards of professional conduct . . . is subject to the reviewing authority of the Civil Service Commission." The town then appealed to this court.

other official investigation, hearing, trial or proceeding." The policy also requires an officer's full cooperation at any such proceedings.

[5]We interpret the statement that "not all of the charges ha[d] been prove[d]" to mean that not all of the subsidiary allegations supporting the charge of conduct unbecoming an officer have been substantiated, i.e., the spitting and the throwing of the equipment bag.

*Discussion.* A person aggrieved by a decision of the appointing authority made pursuant to G. L. c. 31, § 41, may appeal to the commission. General Laws c. 31, § 43, as appearing in St. 1981, c. 767, § 20, provides, "[i]f the commission by a preponderance of the evidence determines that there was just cause for an action taken against such person it shall affirm the action of the appointing authority, otherwise it shall reverse such action . . . . The commission may also modify any penalty imposed by the appointing authority."

The issue for the commission is "not whether it would have acted as the appointing authority had acted, but whether, on the facts found by the commission, there was reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision." *Watertown* v. *Arria,* 16 Mass. App. Ct. 331, 334 (1983). See *Commissioners of Civil Serv.* v. *Municipal Ct. of Boston,* 369 Mass. 84, 86 (1975); *Leominster* v. *Stratton,* 58 Mass. App. Ct. 726, 727-728 (2003). Likewise, the "power accorded the commission to modify penalties must not be confused with the power to impose penalties ab initio, which is a power accorded the appointing authority." *Police Commr. of Boston* v. *Civil Serv. Commn.,* 39 Mass. App. Ct. 594, 600 (1996).

This court has provided guidance for determining when an action of an appointing authority is not reasonably justified and therefore should be reversed or modified by the commission. "In making that analysis, the commission must focus on the fundamental purposes of the civil service system — to guard against political considerations, favoritism, and bias in governmental employment decisions. . . . When there are, in connection with personnel decisions, overtones of political control or objectives unrelated to merit standards or neutrally applied public policy, then the occasion is appropriate for intervention by the commission. It is not within the authority of the commission, however, to substitute its judgment about a valid exercise of discretion based on merit or policy considerations by an appointing authority." *Cambridge* v. *Civil Serv. Commn.,* 43 Mass. App. Ct. 300, 304 (1997). See *Police Commr.*

*of Boston* v. *Civil Serv. Commn.,* 39 Mass. App. Ct. at 600 ("power to modify penalties permits the furtherance of uniformity and the equitable treatment of similarly situated individuals. It must be used to further, and not to frustrate, the purpose of civil service legislation").

In the instant case there were no findings by the commission of political or biased decision-making or inequitable treatment of similarly situated individuals. *Police Dept. of Boston* v. *Collins,* 48 Mass. App. Ct. 408, 412 (2000). Rather the commission was reviewing a discretionary disciplinary decision by the town related to the enforcement of "neutrally applied" standards of conduct. *Cambridge* v. *Civil Serv. Commn.,* 43 Mass. App. Ct. at 304.

The standards themselves are critical to the proper functioning of the police force.[6] We have recognized that a "police department has 'substantial and very practical reasons' for penalizing an officer in such a case, . . . namely to enforce the highest norms of decorum in a department that depends on discipline under conditions of stress." *Police Dept. of Boston* v. *Collins, supra* at 413. Furthermore, "a demonstrated willingness to fudge the truth in exigent circumstances" is a significant problem, because "[p]olice work frequently calls upon officers to speak the truth when doing so might put in question a stop or a search or might embarrass a fellow officer." *Cambridge* v. *Civil Serv. Commn., supra* at 303. The town administrator's decision reflects a thoughtful consideration of the importance of maintaining these high standards of self-control and truthfulness for police officers. It recognizes that "[p]olice officers must . . . behave in a manner that brings honor and respect for rather than public distrust of law enforcement personnel." *Police Commr. of Boston* v. *Civil Serv. Commn.,* 22 Mass. App. Ct. 364, 371 (1986). This applies to off-duty as well as on-duty officers. *Police Commr. of Boston* v. *Civil Serv. Commn.,* 39

---

[6]The standards are also self-evident. We are perplexed by the statement by the commission that the officer "is now on notice that such conduct is unacceptable." Police officers need no such notice to know that public tirades and untruthful responses to superiors in an investigation are unacceptable.

Mass. App. Ct. at 601.[7] As the administrator found, Williams's conduct was not only a stain upon his personal record, but reflected upon the department as a whole.

The basis for the commission's intervention was its conclusion that certain acts that the town found supported the charges were not proved to the commission's satisfaction.[8] As we have previously explained, however, the commission's fact finding on the conduct unbecoming charge differed from the appointing authority's in only two respects. First, the commission found that there was not enough evidence to confirm the allegation of spitting or Williams's intention to strike Haddad with the hockey bag.[9] Nevertheless, the stream of vulgarities and threats broadcast in the parking lot, in front of children, was more than sufficient to support the charge of conduct unbecoming an officer. See *Boston Police Dept.* v. *Collins*, 48 Mass. App. Ct. at 411. Also, although the commission's discussion was somewhat abbreviated, we discern no difference between the administrator's and the commission's fact finding on the charge of untruthfulness. Finally, the town did not assign particular penalties to separate subsidiary acts or even the separate charges. It simply imposed a ten-day suspension for conduct unbecoming an officer and untruthfulness arising out of the incident at the town hockey rink.

In these circumstances, where (1) there were no findings of political considerations, other improper bias, or inequitable treatment; (2) the town's decision involved a discretionary disciplinary decision regarding the enforcement of important standards of conduct; and (3) the charges for which discipline had been imposed were still satisfied by the remainder of the inappropriate conduct, the different subsidiary fact findings did

[7]Although off-duty, Williams lost control of himself in the town in which he worked in front of people, including children, who recognized him as an officer.

[8]The commission also states that the officer had "only one prior discipline in 1991." But there was no comparison by the commission of how other officers with good records were disciplined when they committed offenses such as those involved here. On its face, a suspension of ten days for these offenses, even if first offenses, does not appear unjustified.

[9]As the town argued before us, we note that Williams was never charged with assault for any of his conduct.

not justify modification of discipline by the commission. A ten-day suspension was reasonably justified for the offenses charged and established, regardless of whether the officer engaged in the spitting or propelled the hockey bag at Haddad.

*Conclusion.* For the reasons stated herein, we conclude that the commission improperly substituted its judgment for that of the appointing authority when it reduced Officer Williams's suspension from ten to five days. We therefore reverse so much of the Superior Court judgment as reduced the suspension, and a new provision is added reinstating the ten-day suspension imposed by the Falmouth town administrator. As so modified, the judgment is affirmed.

*So ordered.*